2009 UT 85

**STATE of Utah, acting by and through the SCHOOL & INSTITUTIONAL TRUST LAND ADMINISTRATION, Plaintiff and Appellant,**

v.

**Rex Morrell MATHIS; JoAnn L. Mathis-Ross; William Dale Mathis; Mark Pickup; Shawnda Pickup Cave; Mathis Land, Inc., a Utah corporation; Buck Creek, LLC, a Utah limited liability company; Mountain Mineral Resources, LLC, a Utah limited company; John Does 1–10, Defendants and Appellees.**

No. 20070910.

Supreme Court of Utah.

Dec. 18, 2009.

Mark L. Shurtleff, Att'y Gen., Thomas A. Mitchell, Erin M. Arnold, Asst. Att'ys Gen., Salt Lake City, for plaintiff.

Ronald G. Russell, Daniel A. Jensen, Royce B. Covington, Salt Lake City, for defendants.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 Section 78B–2–201 of the Utah Code prohibits the State of Utah from bringing any "action . . . for or with respect to any real property, its issues or profits, based upon the state's right or title to the real property, unless . . . the right or title to the property accrued within seven years before any action or other proceeding is commenced." [1] In this case, the State, acting through the School and Institutional Trust Lands Administration (the "State"), seeks to void, and recover damages based on, its own conveyance of school trust lands made nearly ninety years ago.

¶ 2 The parties do not dispute that section 78B–2–201 would operate to bar the State's claim against the Mathises in this case. But the parties do dispute whether the seven-year statute of limitations found in section 78B–2–201 may be constitutionally applied to preclude the State from attempting to obtain full value for school trust lands. Accordingly, the sole question we must decide is whether the State's constitutional appointment as trustee over school trust lands exempts it from statutes of limitations in actions involving school trust lands. [2] Because we hold that section 78B–2–201 may constitutionally be applied to the State's challenge, we affirm the district court's grant of summary judgment in favor of the Mathises.

## BACKGROUND

¶ 3 The Mathis Property was part of the trust lands originally granted to Utah for the support of the public schools by Congress in 1896. [3] On February 5, 1905, the State entered into an agreement to sell the Mathis Property to Clarence B. Milner for $1.50 per acre, which was the then-standard price for nonmineral grazing land. Mr. Milner subsequently assigned his rights in the Mathis Property to Carbon County Land Company ("CCLC"). After receiving payment for the Mathis Property, the State conveyed the land to CCLC by patent on February 28, 1912. The State's conveyance included no reservation of mineral rights.

¶ 4 In 1918, the United States Supreme Court ruled, in *United States v. Sweet*, that, in light of legislative history and congressional policy, the Utah Enabling Act could not be interpreted as having passed title to Utah of any lands that were of known mineral character at the time of statehood. [4] As a result,

---

1. Utah Code Ann. § 78B–2–201 (2008).

2. The State argues that any ruling based on the statute of limitations contains an implicit determination that the underlying conveyance was valid and therefore that we must determine both that the conveyance to the Mathises was valid and that the statute of limitations bars the State's claim in order to affirm the district court. We disagree. The plain language of the statute bars the State from bringing any action based on its title to a piece of real property unless the State's right or title to the property accrued within seven years of the challenge. Section 78B–2–201 simply prohibits the State from mounting a chal-

lenge and says nothing about the validity of the underlying conveyance. Accordingly, since the validity of the underlying conveyance is irrelevant to our resolution of this case, we decline to reach it.

3. Although the grant was made in the Utah Enabling Act, which was enacted in 1894, it became effective upon Utah's entry into the Union in 1896. Utah Enabling Act, ch. 138, § 6, 28 Stat. 107, 109 (1894).

4. 245 U.S. 563, 572–73, 38 S.Ct. 193, 62 L.Ed. 473 (1918).

in June 1924, the United States Department of the Interior General Land Office ordered the commencement of administrative proceedings to determine whether several sections of land in Carbon County, including the Mathis Property, were lands of known mineral character in 1896. On September 8, 1926, the Secretary of the Interior issued a final order ruling that the Mathis Property was of known mineral character at the time Utah achieved statehood, and, therefore, that title to the Mathis Property had never passed to the State and that Utah's conveyance of the property to CCLC was invalid. Shortly after this administrative ruling, CCLC ceased paying taxes on the Mathis Property.

¶ 5 Due to the confusion engendered by the Supreme Court's 1918 ruling, Congress passed the Jones Act in 1927.[5] The Jones Act attempted to resolve the confusion by granting title to all school trust lands—regardless of whether they were of known mineral character at the time of statehood or not—to the states on the express condition that the states retain all mineral rights in the lands.[6]

¶ 6 Carbon County appears to have assumed that the Jones Act validated the State's original conveyance of the Mathis Property to CCLC through the doctrine of after-acquired title.[7] Accordingly, on May 28, 1932, the Carbon County Treasurer sold the Mathis Property to Carbon County to offset CCLC's unpaid taxes. Subsequently, Carbon County sold the Mathis Property to Rex Mathis in May of 1938. Since that time, Mr. Mathis and his heirs have paid taxes on the property, leased the mineral estate, and, in all other relevant ways, acted in a manner consistent with ownership of the property.

¶ 7 On January 1, 1998, the Mathises entered into an underground coal lease agreement with Andalex Resources. The State became aware of this lease agreement in 2002. In a letter to the Mathises dated February 3, 2004, the State, for the first time, asserted ownership of the Mathis Property. On March 14, 2005, the State brought this action (1) seeking to quiet title in the mineral estate of the Mathis Property and (2) seeking an accounting of proceeds from the mineral estate.

¶ 8 Both sides filed motions for summary judgment. The district court granted the Mathises' motion, finding that the State's claims were barred by the seven-year statute of limitations found in section 78B–2–201. The State timely appealed, and we have jurisdiction pursuant to section 78A–3–102(3)(j) of the Utah Code.

## STANDARD OF REVIEW

■ ¶ 9 Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[8] In resolving motions for summary judgment, the court views " 'the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.' "[9]

■ ¶ 10 We review a district court's decision to grant summary judgment for correctness, with no deference to the district court's conclusions.[10] Our review is limited to determining whether the district court correctly applied the summary judgment standard in light of the undisputed material facts.[11]

---

5. Act of Jan. 25, 1927, ch. 57 § 1, 44 Stat. 1026, 1026–27 (codified as amended at 43 U.S.C. §§ 70–71) (confirming that title to mineral rights is vested in the State with regard to lands granted in aid of public schools).

6. *Id.*

7. The parties dispute whether this actually occurred. In light of our determination regarding the applicability of the statute of limitations, however, we need not reach the impact of the Jones Act or the applicability of the doctrine of after-acquired title.

8. Utah R. Civ. P. 56(c).

9. *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (quoting *Higgins v. Salt Lake County*, 855 P.2d 231, 233 (Utah 1993)).

10. *Id.*

11. *Murdock v. Springville Mun. Corp.*, 1999 UT 39, ¶ 12, 982 P.2d 65.

## ANALYSIS

¶ 11 In order to authorize Utah's entry into the Union, Congress passed the Utah Enabling Act,[12] which set out the terms and conditions upon which Utah could be admitted as a state.[13] The Enabling Act provided that, upon Utah's admission into the Union, sections 2, 16, 32, and 36 of each township within Utah's borders would be "granted to [the State] for the support of the common schools,"[14] and "[t]hat the proceeds of lands ... granted for educational purposes ... [would] constitute a permanent school fund."[15] The Enabling Act expressly limited the use of "the lands granted ... exclusively for the purposes [t]herein mentioned."[16]

¶ 12 The requirements of the Enabling Act were incorporated into section 2 of article XX of the Utah Constitution, which currently provides as follows:

> Lands granted to the State under Sections 6, 8, and 12 of the Utah Enabling Act, and other lands which may be added to those lands pursuant to those sections through purchase, exchange, or other means, are declared to be school and institutional trust lands, held in trust by the State for the respective beneficiaries and purposes stated in the Enabling Act grants.[17]

¶ 13 This constitutional incorporation "creat[ed] a compact between the federal and state governments, which imposes upon the state a perpetual trust obligation."[18] This obligation requires the State, as trustee, to "manage the lands and revenues generated from the lands in the most prudent and profitable manner possible, and not for any purpose inconsistent with the best interests of the trust beneficiaries."[19]

¶ 14 The State contends that these constitutional provisions confer upon it an absolute right to receive full value for school trust lands and that this right cannot be taken away by operation of other law. Specific to this case, the State argues that its constitutionally imposed duties as trustee prohibit applying the seven-year statute of limitations found in section 78B–2–201 of the Utah Code to prevent the State from suing to recover full value for the Mathis Property. Under its proposed rule, the State might, at any time, point to its own past failure to obtain full value as the basis for overturning its prior conveyance of school trust lands—with the cost of the State's error being borne by the innocent third-party purchaser or its successors in interest.

¶ 15 We disagree with the State's interpretation of the Utah Constitution. The constitutional compact over school trust lands does nothing more than impose on the State the fiduciary obligations of a trustee—including the well-settled obligation of a trustee to make the beneficiary whole when the trust has suffered a loss resulting from the trustee's mismanagement. In other words, nothing in the constitution exempts the State from the consequences of its own fiduciary mismanagement, much less from applicable statutes of limitations. Accordingly, we determine that the district court's application of section 78B–2–201 was correct.

¶ 16 We begin by analyzing whether the Utah Constitution protects the State from the general liability of a trustee to reimburse the trust for conveyances made for less than full value. We then discuss the extent to which our interpretation is consistent with our prior case law, with particular focus on two decisions upon which the State heavily

---

**12.** Utah Enabling Act, ch. 138, 28 Stat. 107 (1894).

**13.** *Jensen v. Dinehart,* 645 P.2d 32, 33 (Utah 1982) ("The Utah Enabling Act authorized the people of Utah to form a constitution and state government; and to be admitted into the Union on an equal footing with the original states....").

**14.** Utah Enabling Act § 6.

**15.** *Id.* § 10.

**16.** *Id.* § 12.

**17.** Utah Const., art. XX, § 2.

**18.** Utah Code Ann. § 53C–1–102(1)(b) (2006); *see also Nat'l Parks & Conservation Ass'n v. Bd. of State Lands,* 869 P.2d 909, 917, 920 (Utah 1993).

**19.** Utah Code Ann. § 53C–1–102(2)(b); *Archer v. Bd. of State Lands & Forestry,* 907 P.2d 1142, 1146–47 (Utah 1995).

relies—*Van Wagoner v. Whitmore*[20] and *Consolidation Coal Co. v. Utah Division of State Lands & Forestry.*[21]

## I. THE CONSTITUTIONAL APPOINTMENT OF THE STATE AS TRUSTEE OVER SCHOOL TRUST LANDS AND THE REQUIREMENT THAT THE STATE GUARANTEE THE STATE SCHOOL FUND AGAINST LOSS MAKE CLEAR THAT THE STATE ITSELF MUST BEAR THE COSTS OF ITS OWN MISMANAGEMENT

■ ¶ 17 Nothing in the text of the Utah Constitution gives the State a *right* to obtain "full value" for trust lands it conveys to a third party. Rather, the constitution appoints the State as trustee over school trust lands and directs the State to administer the lands "for the support of the common schools."[22] The constitution also provides that "[t]he State School Fund shall be guaranteed by the state against loss or diversion."[23]

¶ 18 These constitutional provisions bestow on the State the usual authority and obligations of a trustee.[24] And it is a well-established principle of trust law that when a trustee breaches its fiduciary duty to the beneficiary by conveying away trust property for insufficient value, it is the trustee, rather than innocent third parties, that must reimburse the trust. Comment "d" of Section 205 of the *Restatement (Second) of Trusts* sets out the general rule: "If the trustee is authorized to sell trust property, but in breach of trust he sells it for less than he should receive, he is liable for the value of the property at the time of the sale less the amount which he received."[25]

¶ 19 Illustration 8 of Section 205 is especially on point in relation to this case: "A is trustee for B of Blackacre. By the terms of the trust he is directed to sell Blackacre. He sells Blackacre for $10,000, although if he had not been negligent he could have sold it for $12,000. A is liable for $2,000."[26] Thus, well-settled principles of trust law require that the State, as trustee, bear the cost of its conveyances made in breach of its fiduciary duties.

¶ 20 The State contends that, despite these usually applicable principles, because the school lands trust is created and defined by the constitution, any conveyance inconsistent with the terms of the trust is void because it is unconstitutional. But there is no suggestion in the Utah Constitution that the State should be treated any differently from any other trustee. Instead, the constitution's express creation of a trust and the provision requiring the State to guarantee the State School Fund against loss indicate that the general law of trusts—at least to the extent that it is the duty of a trustee to bear the

20. 58 Utah 418, 199 P. 670 (1921).

21. 886 P.2d 514 (Utah 1994).

22. Utah Enabling Act, ch. 138, § 6, 28 Stat. 107, 109 (1894). Section 2 of Article XX of the Utah Constitution provides that school trust lands are "held in trust by the State for the respective beneficiaries and purposes stated in the Enabling Act grants." Utah Const., art. XX, § 2. And Section 6 of the Utah Enabling Act states that the trust lands are granted "for the support of the common schools," while Section 12 requires that they be "held, appropriated, and disposed of exclusively for the purposes herein mentioned." Utah Enabling Act §§ 6, 12.

23. Utah Const., art. X, § 5(2)(d). The constitution establishes the State School Fund, which is comprised of
"(a) proceeds from the sales of all lands granted by the United States to this State for the support of the public elementary and secondary schools; (b) 5% of the net proceeds from the sales of United States public lands lying within this state; (c) all revenues derived from nonrenewable resources on state lands, other than sovereign lands and lands granted for other specific purposes; (d) all revenues derived from the use of school trust lands; (e) revenues appropriated by the Legislature; and (f) other revenues and assets received by the fund under any other provision of law or by bequest or donation."
*Id.* art. X, § 5(1).

24. *See Nat'l Parks & Conservation Ass'n v. Bd. of State Lands*, 869 P.2d 909, 918 (Utah 1993) (recognizing that "[t]he duties of a trustee apply to the State in administering the school trust lands" and citing authority in support of the proposition that the State is under the same fiduciary duties as a private trustee).

25. Restatement (Second) of Trusts § 205 cmt. d.

26. *Id.* § 205 cmt. d, illus. 8.

cost of its breaches of trust—is what has been constitutionalized in Utah.

¶ 21 As noted above, the constitution specifically provides that "[t]he State School Fund shall be guaranteed by the state against loss or diversion."[27] The State School Fund includes, among other things, all revenues and proceeds obtained from the use and sale of trust lands.[28] When the State conveys away school trust land for less than its full value, the State School Fund suffers a "loss" in the sense that the value of the land sold was not replaced by sale proceeds of equivalent value. Similarly, such a conveyance also results in a "diversion" of funds because a portion of the full value of the trust lands—which would have become part of the State School Fund upon sale—is diverted to the third-party purchaser instead.

¶ 22 By constitutional mandate, it is the State that must make the State School Fund whole when this occurs. Allowing the State to sue to void, or recover damages for, a conveyance it made that resulted in a loss to the State School Fund does not require the State to guarantee anything. Under such a rule, the ultimate guarantor of the State's breach of fiduciary duties would be the innocent purchaser of the lands or his successors in interest. This is contrary to the plain meaning of the constitutional command, which expressly places the State in the position of guarantor of the State School Fund.

¶ 23 Because the Utah Constitution does nothing more than place the State in the position of trustee over school trust lands, we conclude that it does not confer a constitutional right on the State to void conveyances of school trust lands solely on the ground that the conveyance was made for less than full value. In light of this conclusion, the district court was correct in determining that section 78B–2–201 could be constitutionally applied to bar the State's claim against the Mathises in this case.

## II. THE CASE LAW CITED BY THE STATE IN FAVOR OF ITS POSITION IS EITHER DISTINGUISHABLE FROM THE CURRENT CASE OR ERRONEOUSLY DECIDED

¶ 24 The State suggests that our interpretation of the Utah Constitution is a radical departure from our prior precedent regarding school trust lands. The State places particularly heavy reliance on two of our prior cases in support of its reading of the constitution: *Van Wagoner v. Whitmore*[29] and *Consolidation Coal Co. v. Utah Division of State Lands & Forestry.*[30]

¶ 25 We believe that our prior case law is generally consistent with the interpretation we set out above, but recognize that certain statements from both *Van Wagoner* and *Consolidation Coal* could be construed to be in tension with our holding today. Accordingly, we take this opportunity to clarify the nature and scope of our holding in *Van Wagoner* and to disavow certain suggestions in *Consolidation Coal* that were based on an erroneous reliance on United States Supreme Court precedent.

### A. Our Prior Decisions Have Recognized That the State's Constitutional Appointment as Trustee Is Governed by Ordinary Trust Principles

¶ 26 The core of our holding today is that the constitutional appointment of the State as trustee over the school trust lands does no more than impose on the State the ordinary authority and obligations of a trustee. We, as well as the legislature, have recognized this principle in the past.

¶ 27 For example, in *National Parks Conservation Ass'n v. Board of State Lands*, we stated that "[t]he duties of a trustee apply to the state in administering school trust lands,"[31] and cited *County of Skamania v. State*,[32] a Washington Supreme Court case, in support of the proposition that there was a judicial consensus that states charged with

---

27. Utah Const., art. X, § 5(2)(d).

28. *Id.* art. X, § 5(1).

29. 58 Utah 418, 199 P. 670 (1921).

30. 886 P.2d 514 (Utah 1994).

31. 869 P.2d 909, 918 (Utah 1993).

32. 102 Wash.2d 127, 685 P.2d 576 (1984).

administering school trust lands are under the same obligations as those assumed by a private trustee.[33]

¶ 28 Additionally, the legislature, in enacting the School and Institutional Trust Lands Management Act in 1994, set forth its view of the nature of the State's constitutionally imposed fiduciary obligations as follows:

(1)(a) The purpose of this title is to establish an administration and board to manage lands that Congress granted to the state for the support of common schools and other beneficiary institutions, under the Utah Enabling Act.

(b) This grant was expressly accepted in the Utah Constitution, thereby creating a compact between the federal and state governments which imposes upon the state a perpetual trust obligation to which standard trust principles are applied.[34]

Accordingly, the principle upon which our holding rests—that the constitution imposes on the State the normal authority and obligations of a trustee—is not a radical departure from, but is entirely consistent with, our past pronouncements.

B. *Our Prior Holding in Van Wagoner Does Not Stand for the Blanket Proposition That Statutes of Limitations May Never Be Applied to School Trust Lands*

¶ 29 In *Van Wagoner v. Whitmore,*[35] we refused to apply the limitations period for adverse possession to school trust lands. The State cites *Van Wagoner* in support of its contention that statutes of limitations can never be constitutionally applied to prevent the State from challenging a conveyance of school trust lands on the ground that it was made for less than full value. But we did not interpret the Utah Constitution in *Van Wagoner*, and even if we had, any constitutional rule we set out in *Van Wagoner* would not govern affirmative conveyance cases.

¶ 30 Even though constitutional concerns regarding school trust lands appeared to play a significant role in our analysis in *Van Wagoner*, our holding ultimately rested on statutory, rather than constitutional, grounds. In *Van Wagoner*, we held that, in light of the State's constitutionally imposed duty as trustee over school trust lands, it was not conceivable that the legislature could have intended that the adverse possession statute of limitations apply to school trust lands.[36] And although our reading of the statute of limitations in *Van Wagoner* was apparently influenced by our view of the constitutional issues presented,[37] we expressly declined to resolve the case on constitutional grounds.[38] Thus, while our decision in *Van Wagoner* contains dicta regarding this court's opinion of the constitutionality of applying an adverse possession statute of limitations to school trust lands, when stripped down to its essential holding, the opinion speaks only to the question of legislative intent regarding the adverse possession statute.

¶ 31 Furthermore, even if we were to read *Van Wagoner* as a constitutional case, the analysis from *Van Wagoner* would not be controlling here given the significant differences in context and governing law. Rather than a mere claim that a passive state has been deprived of title to school trust land solely by a third party's improvement of the

---

33. *Nat'l Parks & Conservation Ass'n,* 869 P.2d at 918.

34. Utah Code Ann. § 53C–1–102(a)–(b) (2006). While we recognize that the legislature's conception of the constitutional rule is not a controlling statement, it helps refute the State's suggestion that our holding today is inconsistent with a long-settled rule.

35. 199 P. at 676.

36. *Id.* at 675–76.

37. *See id.* at 679 ("Believing, as we did, that by the Enabling Act the state was morally bound because of the 'sacred obligation imposed upon its public faith,' and believing also that by the provisions of the state Constitution it was not only morally but legally bound to see that these lands or the proceeds thereof were devoted to school purposes, the court was of [the] opinion the statutes of limitation had no application to the case." (quoting *Cooper v. Roberts,* 59 U.S. (18 How.) 173, 181–82, 15 L.Ed. 338 (1856)) (on rehearing)).

38. *Id.* ("To bring such lands within the operation of limitation statutes, it is extremely doubtful if anything short of an amendment to the Constitution could effect the result. *It is not necessary, however, to determine that question in the instant case.*" (on rehearing) (emphasis added)).

land in question, as was the case in *Van Wagoner*, this case involves an active state's attempt to void its own affirmative conveyance based upon its own failure to negotiate for sufficient consideration. Even if it were correct that the Utah Constitution prohibits the State, as constitutionally appointed trustee, from losing title to school trust lands through adverse possession, it does not necessarily follow that the State may, after affirmatively exercising the authority granted to it as trustee, require another to bear the costs of its mismanagement.

¶ 32 The text of the Enabling Act, upon which the Utah Constitution's treatment of school trust lands is based, confirms this view. While the Enabling Act does not specifically speak to whether affirmative conveyances for less than full value are prohibited, it does speak to the loss of title by preemption:

> That the proceeds of lands herein granted for educational purposes, except as hereinafter otherwise provided, shall constitute a permanent school fund, the interest of which only shall be expended for the support of said schools, and *such land shall not be subject to pre-emption, homestead entry, or any other entry under the land laws of the United States,* whether surveyed or unsurveyed, but shall be surveyed for school purposes only.[39]

The Enabling Act's express prohibition of preemption provides support for reading *Van Wagoner* to stand for the proposition that statutes of limitations cannot be applied in a way that results in the State losing title to school trust lands through adverse possession. But it provides no support for extending that rule to affirmative conveyances of school trust lands. And given this lack of textual support, coupled with the significant differences in context presented by affirmative conveyance cases, we conclude that *Van Wagoner*, to the extent it might be construed

to set forth a constitutional rule, is limited to the adverse possession context. It simply does not speak to whether a statute of limitations may be applied to bar the State's challenge to its own prior conveyance.

*C. We Disavow Our Prior Suggestion in Consolidation Coal That Conveyances of School Trust Lands for Less Than Full Value Are Null and Void Because It Was Based on Erroneous Reliance on the United States Supreme Court's Decision in Alamo Land & Cattle*

¶ 33 In contrast to *Van Wagoner*, *Consolidation Coal Co. v. Utah Division of State Lands & Forestry*[40] did reach the constitutional issue presented in this case and therefore does provide support for the State's position. Nevertheless, certain key statements in *Consolidation Coal* were taken from the Supreme Court's decision in *Alamo Land & Cattle Co. v. Arizona,*[41] in which the Court interpreted controlling provisions of the New Mexico–Arizona Enabling Act that are simply not present in the Utah Enabling Act. Specifically, although the New Mexico–Arizona Enabling Act expressly provided that conveyances of school trust lands for less than full value were "null and void,"[42] the Utah Enabling Act contains no such provision.[43] We therefore take this opportunity to disavow our suggestion in *Consolidation Coal* that any conveyance of trust lands made for less than full value is "null and void."[44]

¶ 34 *Consolidation Coal* involved the State's lease of trust lands to a coal company. The lease required the company to make royalty payments to the State based on the profits derived from the sale of the coal mined on the land. It was the State's practice to take the royalty payments and invest them in trust accounts, where the funds would earn a certain interest rate. The coal company was late on its royalty payments, and because the lease specified no contract

---

**39.** Utah Enabling Act, ch. 138, § 10, 28 Stat. 107 (1894) (emphasis added).

**40.** 886 P.2d 514 (Utah 1994).

**41.** 424 U.S. 295, 96 S.Ct. 910, 47 L.Ed.2d 1 (1976).

**42.** *See id.* (discussing section 28 of the New Mexico–Arizona Enabling Act, Pub.L. No. 61–219, 36 Stat. 557, 575 (1910)).

**43.** *Compare* Utah Enabling Act § 6 *with* New Mexico–Arizona Enabling Act § 28.

**44.** *See Consolidation Coal,* 886 P.2d at 526 n. 17.

interest rate in the event of default, the 6 percent statutory rate of interest applied to the late payments.[45]

¶ 35 The State argued that it was entitled to the same level of interest that the royalty funds would have earned had they been paid on time and deposited in the trust accounts. The State's position was based on its contention that application of the 6 percent interest rate was an unconstitutional infringement of its right to receive "full value" for the trust lands.[46] We agreed with the State's argument, emphasizing that the Utah Constitution required that the State receive "full value" for its conveyances of school trust lands.[47]

¶ 36 In our analysis, we referenced *Alamo Land & Cattle Co. v. Arizona*,[48] a United States Supreme Court decision that reviewed the disposition of school trust lands in Arizona under the New Mexico–Arizona Enabling Act. We quoted approvingly from the Supreme Court's opinion, stating:

> In *Alamo Land & Cattle Co. v. Arizona*, the United States Supreme Court held that a state could not lease its school trust lands for less than full value. According to the Court:
>
> > The trust is to receive, at the time of its disposition of any interest in the land, the then full value of the particular interest which is being dispensed.... Thus, if the lease of trust lands calls for a rental of substantially less than the land's then fair rental value, it is null and void.[49]

¶ 37 Our reliance on *Alamo Land & Cattle* as controlling authority for the proposition that a lease of school trust lands inconsistent with the fiduciary obligation to receive "full value" is "null and void" was clearly incorrect. Upon review of *Alamo Land & Cattle* it is clear that the Supreme Court's holding did not rest on any general proposition that

conveyances not made in accordance with a constitutionally created trust were automatically "null and void," but upon its interpretation of specific provisions contained in the New Mexico–Arizona Enabling Act. The Supreme Court stated:

> What the Act requires—and we think that this is clear from *Ervien* and *Lassen*—is that the trust is to receive, at the time of its disposition of any interest in the land, the then full value of the particular interest which is being dispensed.
>
> · · ·
>
> · ... The New Mexico–Arizona [E]nabling Act has a protective provision against the initial setting of lease rentals at less than fair rental value. This is specifically prohibited by § 28. The prohibition is given bite by the further very drastic provision that a lease not made in substantial conformity with the Act "shall be null and void." Thus, if the lease of trust lands calls for a rental of substantially less than the land's then fair rental value, it is null and void and the holder of the claimed leasehold interest could not be entitled to compensation upon condemnation.[50]

■ ¶ 38 Neither the Utah Constitution nor the Utah Enabling Act have comparable "drastic provision[s]" stating that any conveyance of school trust lands contrary to the terms of the trust is "null and void." And the Supreme Court's holding in *Alamo Land & Cattle* that a conveyance of trust lands in Arizona for less than full value was "null and void" was based on the existence of these separate provisions in the New Mexico–Arizona Enabling Act. Therefore, our reliance on *Alamo Land & Cattle* was in error, and we now disavow our suggestion from *Consolidation Coal* that conveyances of school trust lands for less than full value are null and void. Instead, as set out above, when the

---

45. *Id.* at 517–18.

46. *Id.* at 525.

47. *Id.* at 525–26.

48. 424 U.S. 295, 96 S.Ct. 910, 47 L.Ed.2d 1 (1976).

49. *Consolidation Coal*, 886 P.2d at 526 n. 17 (quoting *Alamo Land & Cattle*, 424 U.S. at 303, 96 S.Ct. 910) (omission in original).

50. *Alamo Land & Cattle*, 424 U.S. at 303–05, 96 S.Ct. 910 (referring to *Ervien v. United States*, 251 U.S. 41, 40 S.Ct. 75, 64 L.Ed. 128 (1919); *State v. Lassen*, 99 Ariz. 161, 407 P.2d 747 (1965)).

State breaches its obligation to receive full value in conveying trust lands, such conveyances are effective, but the State is required to reimburse the trust for the loss.

## CONCLUSION

¶ 39 The Utah Constitution mandates that the State manage school trust lands for the benefit of Utah's public schools. It invests the State with the authority to do so and imposes on it the fiduciary obligations of a trustee. But it does not confer a right on the State to be immune from the consequences of its own fiduciary mismanagement. If the State has failed to meet its fiduciary obligations, the State itself, rather than third-party purchasers, must bear the costs of such a failure. Accordingly, we affirm the district court's decision to grant summary judgment in favor of the Mathises.

¶ 40 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice DURRANT'S opinion.