2009 UT 43

**MID–AMERICA PIPELINE COMPANY and Williams Field Services Company, Plaintiffs, Counterclaim Defendants, and Appellants,**

v.

**FOUR–FOUR, INC., Defendant, Counterclaimant, and Appellee.**

No. 20070828.

Supreme Court of Utah.

July 21, 2009.

Michael D. Zimmerman, Mark O. Morris, Troy L. Booher, Stewart O. Peay, Salt Lake City, for plaintiffs.

C. Richard Henriksen, Jr., Robert M. Henriksen, Jonathan G. Winn, Salt Lake City, for defendant.

WILKINS, Justice:

## INTRODUCTION

¶ 1 Appellants Mid–America Pipeline Company and Williams Field Services Company

(Mid–America [1]) ask us to determine whether the claims it wishes to file in a Third Amended Complaint comply with the terms of a release agreement it entered into with Appellee Four–Four, Inc. (Four–Four). It also asks us to determine whether the district court violated the law of the case by holding that those claims are not consistent with the release agreement.

## BACKGROUND

¶ 2 Mid–America and Four–Four entered into an agreement pursuant to which Four–Four was to construct approximately 330 miles of a 427 mile natural gas pipeline between Huerfano, New Mexico and Vernal, Utah. The project was plagued by various delays and setbacks, including an explosion that occurred when a Four–Four bulldozer struck and punctured a live gas line. Following the explosion, Mid–America reduced the scope of Four–Four's involvement in the project to exclude a portion of the pipeline to be built in an area known as Baxter Pass.

¶ 3 Litigation arose between the parties, eventually leading to execution of a Letter Agreement on September 19, 2005, the purpose of which was to settle claims covered by Four–Four's insurance carriers. The Letter Agreement provides that Four–Four pay $4.1 million to Mid–America and that, in turn, Mid–America release (1) all of its negligence claims, (2) all claims related to the removal of Four–Four from work at Baxter Pass, (3) all claims related to the explosion, and (4) alternative claims for unjust enrichment seeking the same relief as the other released claims. Additionally, the Letter Agreement contains a provision specifying that Mid–America "will prepare and file . . . an Amended Complaint . . . the language of which will be agreed upon by the parties and shall be consistent with the [Letter Agreement]."

¶ 4 In August 2005, as part of the negotiations leading up to the Letter Agreement, Mid–America prepared and tendered to Four–Four a draft of a Third Amended Complaint outlining the additional claims that would remain if settlement were reached on the insured claims (the August Complaint). As outlined in the August Complaint, Mid–America alleges that: (1) "Four–Four breached its obligation to supervise its agents, employees, and personnel"; (2) "Four–Four breached the Contract by providing inadequate and untimely performance in the construction and implementation of its portion of the Pipeline"; (3) "Four–Four breached the Contract by adding additional personnel and equipment without [Mid–America's] approval"; and (4) in the alternative, Four–Four was unjustly enriched by retaining payments made by Mid–America.

¶ 5 Four–Four rejected the August Complaint both before and after the execution of the Letter Agreement and asserted that the only claims that survived the agreement are (1) Four–Four's failure to pay subcontractor liens, and (2) Four–Four's excess charges for standby. Four–Four proposed a general release to this effect in October 2005.

¶ 6 In response, in December 2005, Mid–America proposed another version of the amended complaint which reflected Four–Four's understanding of the surviving claims. However, this version of the complaint was only acceptable to Mid–America if Four–Four agreed to pay additional money in settlement. The parties did not reach agreement and no version of the Third Amended Complaint was filed. Four–Four did not tender any of the agreed upon payment to Mid–America.

¶ 7 Four–Four subsequently brought an action to enforce the Letter Agreement, which was heard by Judge Stephen L. Henriod on January 26, 2007. Judge Henriod found that the Letter Agreement was enforceable and unambiguous, that Four–Four had breached the agreement by insisting on an overbroad and inconsistent release agreement, and that the August Complaint was consistent with the terms of the Letter Agreement. Judge Henriod ordered that, after Four–Four had tendered the settlement amount and interest, Mid–America "file a

---

**1.** At different stages of these proceedings, Plaintiffs have alternately referred to themselves as "Mid–America" and as "Williams." For purposes of clarity, we refer to them collectively as "Mid–America."

Third Amended Complaint that is consistent with the Letter Agreement."

¶ 8 On March 28, 2007, Mid–America filed a Third Amended Complaint which was largely similar to, but not identical to, the August Complaint (the March Complaint). In response, Four–Four filed a Motion to Strike the portions of the March Complaint it claimed were inconsistent with the Letter Agreement—specifically, the same four additional claims that Judge Henriod had ruled were within the scope of the settlement.

¶ 9 Due to Judge Henriod's case load, the case was reassigned to Judge Robert P. Faust. Judge Faust held a hearing on the Motion to Strike, during which he instructed the parties to try again to arrive at a Third Amended Complaint that was acceptable to both of them, as required under their Letter Agreement. These negotiations failed, and on August 21, 2007, both parties submitted proposed complaints for a determination by the court as to which one was consistent with the Letter Agreement. Although Mid–America's submitted complaint again contained variations in its language from the March complaint, it retained the additional claims. Four–Four's version of the complaint adopted some of Mid–America's most recently proposed changes, but did not include the additional claims. After "carefully review[ing] the file . . ., the Letter Agreement[,] and prior rulings," Judge Faust granted Four–Four's Motion to Strike and ruled that Four–Four's version of the complaint was consistent with the Letter Agreement. Mid–America appeals this ruling.

## ANALYSIS

¶ 10 We first address Mid–America's contention that Judge Faust violated the law of the case by essentially reversing Judge Henriod's ruling on the additional claims. We then address whether the additional claims were retained under the Letter Agreement.

## I. JUDGE FAUST DID NOT VIOLATE THE LAW OF THE CASE

¶ 11 Mid–America inverts the law by suggesting that law of the case doctrine prevents a district court from reconsidering a resolved issue. Law of the case does not prohibit a district court judge from revisiting a previously decided issue during the course of a case, regardless of whether the judge has changed or remained the same throughout the proceedings. Rather, "the doctrine *allows* a court to decline to revisit issues within the same case once the court has ruled on them." *IHC Health Servs., Inc. v. D & K Mgmt.*, 2008 UT 73, ¶ 26, 196 P.3d 588 (emphasis added).

¶ 12 We have held that "under the law of the case doctrine, a decision made on an issue during one stage of a case is binding in successive stages of the same litigation." *Id.* (internal quotation marks omitted). In the initial stages of litigation, however, this rule has reference only to the parties to the case. "While a case remains pending before the district court prior to any appeal, the parties are bound by the court's prior decision, but the court remains free to reconsider that decision. It may do so sua sponte or at the suggestion of one of the parties." *Id.* ¶ 27. Thus the doctrine of law of the case tracks with the Utah Rules of Civil Procedure, which provide that prior to final judgment, "any order or other form of decision, however designated, that adjudicates fewer than all the claims . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Utah R. Civ. P. 54(b).

¶ 13 In contrast, a district court's power to reconsider decided issues is limited when the case has been appealed and remanded. *IHC Health Servs.*, 2008 UT 73, ¶ 27, 196 P.3d 588. This aspect of law of the case doctrine is frequently referred to as the mandate rule. *Id.* ¶ 28. "The mandate rule, unlike the law of the case before a remand, binds both the district court and the parties to honor the mandate of the appellate court." *Id.* Thus, the decisions of an appellate court become the law of the case and cannot be reconsidered on remand.

¶ 14 While there are exceptions to the doctrine of law of the case, these exceptions function only to dictate when the district court has no discretion but rather *must* re-

consider a previously decided, unappealed issue. *Id.* ¶ 33. These exceptions are " '(1) when there has been an intervening change of authority; (2) when new evidence has become available; or (3) when the court is convinced that its prior decision was clearly erroneous and would work a manifest injustice.' " *Id.* ¶ 34 (quoting *Gildea v. Guardian Title Co.,* 2001 UT 75, ¶ 9, 31 P.3d 543).

¶ 15 In the instant case, Judge Faust was not required to reconsider whether the additional claims proposed by Mid–America were foreclosed by the Letter Agreement. Nor, however, was he forbidden from doing so. Judge Faust operated well within his discretion and did not violate the law of the case.

## II. MID–AMERICA'S ADDITIONAL CLAIMS ARE NOT FORECLOSED BY THE LETTER AGREEMENT

¶ 16 The question of whether Mid–America can include its additional claims in its Third Amended Complaint is essentially one of contract interpretation. When, as in this case, a contract is unambiguous and can be interpreted as a matter of law, we review the district court's interpretation for correctness, according no deference to the district court. *See Peterson v. Sunrider Corp.,* 2002 UT 43, ¶ 14, 48 P.3d 918. In interpreting the Letter Agreement, ordinary contract principles apply.

¶ 17 The Letter Agreement contains a provision stating that Mid–America "will prepare and file ... an Amended Complaint ... the language of which will be agreed upon by the parties and shall be consistent with the [Letter Agreement]." Despite this provision, Mid–America and Four–Four have never reached agreement on the wording of the Third Amended Complaint. Rather than insisting on agreement, they each submitted different versions of the complaint to the court and asked the court to decide which version complied with the Letter Agreement. Thus, both parties waived this provision of the contract. "Waiver of a contractual right occurs when a party to a contract intentionally acts in a manner inconsistent with its contractual rights, and, as a result, prejudice accrues to the opposing party or parties to the contract." *Flake v. Flake,* 2003 UT 17, ¶ 31, 71 P.3d 589 (internal quotation marks omitted). The parties' choice to have the court select a Third Amended Complaint rather than reach agreement on the wording between themselves was an intentional act inconsistent with their rights under the contract. As both parties waived the provision, we need not address whether the waiver resulted in prejudice. *See Ryan v. Curlew Irrigation & Reservoir Co.,* 36 Utah 382, 104 P. 218, 220 (1909)(holding that when both parties to a contract ignore a clause of the contract, the clause is waived and cannot then be enforced against one party in favor of the other.)

¶ 18 "[I]t is well established that parties to a contract may, by mutual consent, modify any or all of a contract." *Pasker, Gould, Ames & Weaver, Inc. v. Morse,* 887 P.2d 872, 877 (Utah Ct.App.1994)(internal quotation marks omitted). The provision requiring agreement on the language of the Third Amended Complaint is neither a condition precedent to the agreement nor a term essential to the accomplishment of the balance of the contract. By waiving this provision, the parties essentially, through their conduct, accomplished a modification of the contract. As with an oral modification of a written contract, "the remaining terms of the initial agreement still govern." *R.T. Nielson Co. v. Cook,* 2002 UT 11, ¶ 18, 40 P.3d 1119. The district court was therefore free to interpret the agreement on its remaining terms as a matter of law. We review for correctness. *Peterson,* 2002 UT 43, ¶ 14, 48 P.3d 918.

¶ 19 The interpretation of a contract is controlled by the intentions of the parties. *Cent. Fla. Invs., Inc. v. Parkwest Assocs.,* 2002 UT 3, ¶ 12, 40 P.3d 599. We determine the intentions of the parties by first looking within the four corners of the agreement. *Id.* Provided that the language within the four corners of the agreement is unambiguous, we look no further than the plain meaning of the contractual language. *Id.* We consider extrinsic evidence of the parties' intentions only if the contractual language is ambiguous. *Id.* We find ambiguity

in the language only if it is reasonably susceptible to more than one interpretation. *Id.*

¶ 20 The Letter Agreement is not ambiguous. The plain language clearly indicates that the parties intended a specific, rather than a general, release of claims. A specific release precisely delineates exactly which claims the parties agree to release and retains all claims that are not so described in the agreement. In contrast, a general release contains broad language that releases "all claims between the parties except for those which are expressly reserved." *Larry J. Coet Chevrolet v. Labrum,* 2008 UT App 69, ¶ 20, 180 P.3d 765.

¶ 21 Mid–America and Four–Four expressly agreed that Mid–America would (1) "dismiss with prejudice all of its pending negligence claims against Four–Four and release any unpled and/or future negligence claims that it may have against Four–Four relating to or arising out of the Rocky Mountain Expansion Project;" (2) "dismiss with prejudice all claims for damages arising from or relating to [Mid–America's] removing Four–Four from the Baxter Pass portion of the Rocky Mountain Expansion Project;" (3) "dismiss with prejudice all claims for breach of contract and all contract theory claims against Four–Four for damages directly and indirectly caused by, related to, or based upon in any way the December 3, 1998 . . . explosion and its aftermath . . . and also agree to release any unpled or future breach of contract and contract theory claims against Four–Four directly and indirectly caused by, related to, or based upon in any way said explosion;" and (4) "dismiss with prejudice all of its alternative claims for unjust enrichment seeking the same relief consistent with what the parties have agreed to release in this agreement." Thus, Mid–America has released only four specific claims. While the language with respect to the release of these four specific claims is quite broad, it has no impact on any other claims Mid–America may wish to bring which are not directly or indirectly related to negligence, Baxter Pass, the explosion, or unjust enrichment pled in the alternative to the released claims. Thus, under the plain language within the four corners of the contract,

Mid–America's additional claims of inadequate supervision, inadequate and untimely performance, and impermissible addition of additional personnel and equipment were not released by the Letter Agreement.

¶ 22 With the provision that the parties must agree on the language of the complaint waived, Mid–America is free to file any Third Amended Complaint it likes, as long as that complaint complies with the remaining, operative provisions of the agreement. Specifically, its Third Amended Complaint must avoid in all respects the claims that it has released in the Letter Agreement.

¶ 23 The evidence presented in support of Mid–America's additional claims at trial must also avoid any reference to the released claims. Whether evidence is free from the taint of the released claims is to be determined by the sound judgment of the trial court as the case develops.

## CONCLUSION

¶ 24 Our interpretation of the Letter Agreement is now the law of the case. We vacate Judge Faust's order and remand to the trial court for consideration of an amended complaint, to be filed by Mid–America, consistent with this opinion.

¶ 25 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Justice WILKINS' opinion.