2011 UT App 441

**KEYBANK NATIONAL ASSOCIATION,**
Plaintiff and Appellee,

v.

**SYSTEMS WEST COMPUTER RE-
SOURCES, INC.; and Nancy H. Halver-
son, Defendants and Appellants.**

No. 20100101–CA.

Court of Appeals of Utah.

Sept. 22, 2011.

As Amended on Denial of Rehearing
Dec. 22, 2011.

David K. Isom and Matthew M. Boley, Salt Lake City, for Appellants.

Gerald H. Suniville, Stephen K. Christiansen, and Seth M. Mott, Salt Lake City, for Appellee.

Before Judges VOROS, ROTH, and CHRISTIANSEN.

AMENDED OPINION [1]

CHRISTIANSEN, Judge:

¶1 Defendants Systems West Computer Resources, Inc. and Nancy Halverson (collectively, Systems West) [2] appeal the district court's grant of summary judgment to plaintiff KeyBank National Association (KeyBank) on KeyBank's breach of contract and related

---

1. This Amended Opinion replaces the Opinion in Case No. 20100101–Ca issued on September 22, 2011

2. For the most part, we refer to Systems West and Halverson collectively as Systems West as a convenience to the reader because their arguments on appeal are the same.

claims and on Systems West's counterclaims. We affirm.

## BACKGROUND [3]

¶ 2 This controversy stems from Key-Bank's one-million-dollar loan to Systems West. On January 9, 2001, KeyBank wrote Systems West a letter (the January 2001 letter) confirming its approval of the one-million-dollar line of credit. The letter explained that the maturity date would be "7/31/01, then annually from that point forward." The repayment provided for "[m]onthly interest, principal and interest at maturity." On January 10, 2001, the parties executed several loan documents, including a Business Loan Agreement, a Promissory Note (the Note), and a Commercial Security Agreement. Halverson, President and CEO of Systems West, personally guaranteed the Note in a Commercial Guaranty. The maturity date of the Note was extended numerous times, and the loan finally came due July 15, 2008. Systems West failed to fully repay the balance of the loan.

¶ 3 The Business Loan Agreement's provisions at issue in this matter (the Term Provisions) provided,

TERM. This Agreement shall be effective as of January 10, 2001, and shall continue in full force and effect until such time as all of [Systems West's] Loans in favor of [KeyBank] have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

LINE OF CREDIT. [KeyBank] agrees to make Advances to [Systems West] from time to time from the date of this Agreement to the Expiration Date, provided the aggregate amount of such Advances outstanding at any time does not exceed the Borrowing Base. Within the foregoing limits, [Systems West] may borrow partially or wholly prepay, and reborrow under this Agreement as follows: .... There shall not exist at any time of any Advance a condi-

tion which would constitute an Event of Default under this Agreement.

Expiration Date. The words "Expiration Date" mean the date of termination of [KeyBank's] commitment to lend under this Agreement.

¶ 4 The Business Loan Agreement contained several other pertinent provisions, including provisions for default, acceleration, and cure of default. For example, it provided that default would occur if Systems West "fails to make any payment when due under the Loan" or "fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents." The Business Loan Agreement also addressed KeyBank's right to accelerate the loan upon default, stating,

If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at [KeyBank's] option, all indebtedness immediately will become due and payable, all without notice of any kind to [Systems West]....

Additionally, "a default, other than a default on indebtedness, is curable ... if Systems West ... has not been given a notice of a similar default within the preceding twelve ... months...." The Business Loan Agreement defined "indebtedness" as "the indebtedness evidenced by the Note or Related Documents, including all principal and interest."

¶ 5 Aside from the agreements extending the maturity date of the Note, the Business Loan Agreement was modified twice: once on November 30, 2001, and again on October 2, 2006. The Modification of Business Loan Agreement and Promissory Note, executed on October 2, 2006, provided for the following:

---

**3.** When reviewing a summary judgment decision, we view the facts "in the light most favorable to the nonmoving party," *see Glenn v. Reese*, 2009 UT 80, ¶ 6, 225 P.3d 185, and recite the facts accordingly.

*Extension of Loan Term.* The Parties agree that the term of the Loan, and the maturity date of the Note, is hereby extended to July 31, 2007. During such extended term, [Systems West] will continue to make payments as provided in the Agreement and Note, as modified by the Prior Modifications. Any reference in the Agreement, the Note, or the other Related Documents to the "Expiration Date," the "Maturity Date," or to any other term with reference to the date the Loan matures, the date [KeyBank's] obligations to make additional advances under the Agreement terminates, or the date the Note becomes due and payable shall henceforth mean July 31, 2007.

¶ 6 The Note originally matured on July 31, 2001. The Note provided,

> Systems West . . . promises to pay to Key-Bank . . . the principal amount of One Million . . . or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. . . . [Systems West] will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on July 31, 2001.

The parties extended the maturity date of the Note for successive terms seventeen times—first by agreements entitled Modification and/or Extension Agreements and then by Change in Terms Agreements. They executed the final extension by a Change in Terms Agreement dated June 27, 2008. The Note finally matured on July 15, 2008.

¶ 7 The Modification and/or Extension Agreements each contained a provision that stated, "Except as modified above, all other provisions of the Promissory Note and any other documents securing or relating to the Loan . . . remain in full force and effect." Each Change in Terms Agreement contained a similar provision:

> Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agree-ments evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms.

¶ 8 The parties agree that they executed several written instruments that constituted an integrated agreement. Most of the written instruments executed in January 2001 contained an integration clause. Each of the various Modification and/or Extension Agreements and Change in Terms Agreements, in which the maturity date of the original Note was extended, also contained an integration clause. Additionally, the two Business Loan Agreement modifications each contained an integration clause. Accordingly, we refer to the complete and final expression of the parties' bargain as the Integrated Agreement.

¶ 9 After Systems West failed to fully pay the loan's balance by July 15, 2008, KeyBank filed a complaint against Systems West, alleging breach of contract, breach of guarantee, and failure to turn over collateral. These allegations stem from Systems West's default in failing to pay the loan in full by July 15, 2008. Systems West filed counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, breach of fiduciary duty, promissory estoppel, and defamation.

¶ 10 About a year after filing the complaint, KeyBank moved for summary judgment, alleging, inter alia, that based on the undisputed and unambiguous facts in the terms of the Integrated Agreement, Systems West breached its contractual obligations to KeyBank by failing to pay off the loan on the maturity date.[4] The district court entered summary judgment in KeyBank's favor on all of its causes of action and dismissed Systems West's counterclaims. The court determined that the Integrated Agreement's terms were unambiguous and that Systems West default-

---

4. In its motion for summary judgment, KeyBank also alleged that Systems West breached the contract when it defaulted by failing to maintain its borrowing base and assets-to-liability ratio. Key-Bank did not allege this ground for Systems West's default in its complaint, the district court did not specifically base its ruling on this ground, and Systems West does not raise it on appeal. Thus, we do not address it further.

ed in its payment obligation to KeyBank. Accordingly, the district court entered judgment against Systems West for $978,372, not including $77,855 for accrued interest, $176 for continuing per diem interest, $100,061 for attorney fees, and $4622 for costs. The district court also ruled that Systems West's "counterclaims are barred because they seek to impose duties and obligations that are inconsistent with the express terms of the Loan Documents." Systems West appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 11 Systems West agrees with the district court's ruling that its agreement with Key-Bank was integrated. However, contrary to the district court's ruling, Systems West argues that the Integrated Agreement unambiguously provides that so long as Systems West made timely interest payments, Key-Bank had to continue to extend the loan's maturity date until either Systems West paid off the loan or both parties agreed in writing to terminate the agreement. Alternatively, Systems West argues that the Integrated Agreement was ambiguous, and therefore, the district court erred by excluding parol evidence regarding the parties' intent.

¶ 12 Systems West also contends that the district court erred when it failed to consider parol evidence, which would have created a factual dispute that would have precluded summary judgment, regarding Systems West's counterclaims for breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and breach of fiduciary duty.[5] Finally, in a related argument, Systems West contends that the district court erred when it dismissed Systems West's counterclaim for breach of the implied covenant of good faith and fair dealing because such a claim required the district court to consider the parties' course of dealings.[6]

¶ 13 "The propriety of a grant ... of summary judgment is a question of law, which we review for correctness." *Glenn v. Reese,* 2009 UT 80, ¶ 6, 225 P.3d 185. This court considers "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Id.* (internal quotation marks omitted). Summary judgment is proper only "if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "Questions of contract interpretation which are confined to the language of the contract itself are questions of law, which we review for correctness." *Mellor v. Wasatch Crest Mut. Ins. Co.,* 2009 UT 5, ¶ 7, 201 P.3d 1004. Additionally, "whether a contract is ambiguous is a question of law reviewed for correctness." *Tangren Family Trust v. Tangren,* 2008 UT 20, ¶ 10, 182 P.3d 326.

## ANALYSIS

### I. The Integrated Agreement

¶ 14 The parties' interpretations of the terms of the Integrated Agreement differ. Systems West makes two alternative arguments: (1) the Integrated Agreement's terms unambiguously provided for indefinite extensions of the maturity date so long as Systems West made its required monthly interest payments and unless the parties agreed in writing to terminate their agreement; and (2) the Integrated Agreement's ambiguous terms required the district court to accept parol evidence such as Halverson's declaration.

¶ 15 Because the Integrated Agreement was fully integrated, "parol evidence is admissible only to clarify ambiguous terms; it is not admissible to vary or contradict the clear and unambiguous terms of the contract." *Id.* ¶ 11 (internal quotation marks omitted). Thus, we must first determine

---

5. Systems West does not appeal the district court's summary judgment ruling dismissing its promissory estoppel and defamation counterclaims.

6. Systems West also argues that the district court erred in granting KeyBank's motion for summary judgment on Systems West's counterclaims because they were not within the scope of Key-Bank's motion. We determine without further

analysis that KeyBank moved to dismiss these counterclaims in its motion for summary judgment. Although KeyBank's argument was perhaps not explicit in its caption or introduction, KeyBank clearly argued that the district court should exclude Systems West's parol evidence and that absent parol evidence, Systems West's counterclaims fail as a matter of law.

whether the Integrated Agreement is ambiguous. In *Daines v. Vincent*, 2008 UT 51, 190 P.3d 1269, the Utah Supreme Court articulated Utah law concerning contractual ambiguity as follows:

[C]ontractual ambiguity can occur in two different contexts: (1) facial ambiguity with regard to the language of the contract and (2) ambiguity with regard to the intent of the contracting parties. The first context presents a question of law to be determined by the judge. The second context presents a question of fact where, if the judge determines that the contract is facially ambiguous, parol evidence of the parties' intentions should be admitted. Thus, before permitting recourse to parol evidence, a court must make a determination of facial ambiguity.

*Id.* ¶ 25 (citations and internal quotation marks omitted). We address only the first context for contractual ambiguity—facial ambiguity. Because we conclude that the Integrated Agreement is not facially ambiguous, we do not consider parol evidence of the parties' intentions.

A. Systems West Presents No Reliable Evidence that the Integrated Agreement Is Facially Ambiguous.

■■ ¶ 16 The *Daines* court clarified the two-part rule to determine facial ambiguity developed in *Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264 (Utah 1995). *See id.* ¶¶ 25–27. First, the court must consider any reliable evidence about whether the agreement is facially ambiguous. *See id.* ¶ 26. Second, if the court finds ambiguity, it must ensure that any contrary interpretations of the agreement " 'are reasonably supported by the language of the contract.' " *Id.* (quoting *Ward*, 907 P.2d at 268). Accordingly, "in cases where we have not found ambiguity, the language of the contract or release was not susceptible to 'contrary, tenable interpretations.' " *Id.* ¶ 30 (quoting *WebBank v. American Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 27, 54 P.3d 1139). In other words,

"there can be no ambiguity where evidence is offered in an attempt to obscure otherwise plain contractual terms." *Id.* ¶ 31.

¶ 17 Systems West presents almost no evidence to clarify the existence of a facial ambiguity. Although it often refers to Halverson's declaration regarding her understanding of her oral communications with KeyBank's representatives that KeyBank would continue to extend the loan's maturity date and would not demand full payment unless both parties agreed in writing to terminate their agreement, this parol evidence does not address the existence of a facial ambiguity in the Integrated Agreement; rather, the declaration refers to the parties' intent.[7] As we explained, we will not consider parol evidence of the parties' intent until we have established that the Integrated Agreement is facially ambiguous. *See id.* ¶ 25.

■ ¶ 18 Although we do not consider the parties' course of conduct as evidence of intent, we do consider it as evidence of facial ambiguity. *See id.* ¶ 29; *Peterson v. Sunrider Corp.*, 2002 UT 43, ¶ 19, 48 P.3d 918. Evidence of the parties' course of conduct includes their multiple agreements over seven years to extend the maturity date. As we explain below, we determine that the parties' course of conduct does not reflect a contrary interpretation of the Integrated Agreement. Other than the January 2001 letter and the parties' course of conduct, our review is limited to the actual loan documents comprising the Integrated Agreement. We do not consider parol evidence of the parties' intent that would alter the Integrated Agreement's express terms. *See Glenn v. Reese*, 2009 UT 80, ¶ 10, 225 P.3d 185.

B. The Integrated Agreement Unambiguously Expressed a Maturity Date and Did Not Require KeyBank to Indefinitely Extend the Maturity Date.

■ ¶ 19 "When determining whether the plain language is ambiguous, 'we attempt

7. Systems West contends that the January 2001 letter addressed to Halverson is part of the Integrated Agreement. We disagree. The January 2001 letter is not part of the Integrated Agreement because it was sent before the parties signed the loan documents comprising the Integrated Agreement and because the Integrated Agreement contains integration clauses. But, whether we review the January 2001 letter as part of the Integrated Agreement or as evidence to clarify any facial ambiguity in the Integrated Agreement, it does not alter our conclusion that the Integrated Agreement is not facially ambiguous.

to harmonize all of the contract's provisions and all of its terms.'" *Id.* (quoting *Central Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599). "[T]o harmonize the provisions of a contract, 'we examine the entire contract and all of its parts in relation to each other and give a reasonable construction of the contract as a whole to determine the parties' intent.'" *Gillmor v. Macey*, 2005 UT App 351, ¶ 19, 121 P.3d 57 (quoting *Brixen & Christopher Architects v. Elton*, 777 P.2d 1039, 1043 (Utah Ct.App.1989)), *cert. denied*, 126 P.3d 772 (Utah 2005). Also, "[w]hen interpreting the plain language, 'we look for a reading that harmonizes the provisions and avoids rendering any provision meaningless.'" *Peterson & Simpson v. IHC Health Servs., Inc.*, 2009 UT 54, ¶ 13, 217 P.3d 716 (quoting *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 2009 UT 7, ¶ 28, 210 P.3d 263).

¶ 20 We agree with the district court that the Integrated Agreement is unambiguous as a matter of law. We hold that, by its plain language, the Integrated Agreement unambiguously provided a one-million-dollar revolving line of credit with a definite maturity date by which date Systems West was required to fully repay the loan. The Business Loan Agreement established the terms by which the parties operated the line of credit, and the terms were expressly adopted by each agreement extending the maturity date.

¶ 21 The Term Provisions of the Business Loan Agreement provided, "This Agreement . . . shall continue in full force and effect until such time as all of [Systems West's] Loans in favor of [KeyBank] have been paid in full, including principal [and] interest, . . . or until such time as the parties may agree in writing to terminate this Agreement." However, the Business Loan Agreement did not set a maturity date for when payment in full was required and instead relied on the Note to establish a maturity date for the loan and on the various agreements to extend the maturity date. The Business Loan Agreement also provided,

[KeyBank] agrees to make Advances to [Systems West] from time to time from the date of this Agreement to the Expiration Date[, defined as "the date of the termination of [KeyBank's] commitment to lend,"] provided the aggregate amount of such Advances outstanding at any time does not exceed the Borrowing Base. Within the foregoing limits, [Systems West] may borrow, partially or wholly prepay, and reborrow under this Agreement. . . .

¶ 22 KeyBank's obligation to advance funds was, however, subject to the proviso that "[t]here shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement."[8] Indeed, the Business Loan Agreement provided that in the event of a default, KeyBank's obligations would terminate and "all indebtedness immediately [would] become due and payable, all without notice of any kind to Borrower. . . ." An event of default included, among other things, Systems West "fail[ing] to make any payment when due under the Loan." Systems West had a right to cure "[i]f any default, other than a default on Indebtedness, [was] curable and . . . [Systems West] . . . ha[d] not been given a notice of a similar default within the preceding twelve months." The Business Loan Agreement defined "indebtedness" as "the indebtedness evidenced by the Note or Related Documents, including all principal and interest."

¶ 23 Thus, the Business Loan Agreement's unambiguous terms provided a revolving line of credit that would expire on the occurrence of any one of the following conditions: (1) the parties agreed in writing to terminate, (2) Systems West paid its loan in full, (3) Systems West defaulted and, after having been given notice to cure, failed to cure a curable default, or (4) Systems West defaulted on indebtedness for which it did not have a right to cure.

¶ 24 In addition to these terms governing the duration of the Business Loan Agreement, the Note bore a clear maturity date. The original maturity date of the Note was

---

8. Under the Business Loan Agreement, "'[a]dvance' means a disbursement of Loan funds made . . . to Systems West."

July 31, 2001. The parties extended the maturity date in the Note seventeen times, and although they sometimes changed the interest rate, they did not alter the Business Loan Agreement's terms. Thus, as evidenced by the Note, repayment of the loan was due at the original maturity date and repayment was excused only because the parties agreed to extend the maturity date of the loan. In fact, the parties agreed to extend the maturity date of the loan seventeen times, sometimes prior to and sometimes after the existing maturity date. KeyBank does not dispute that prior to each extended maturity date, Systems West made monthly interest payments required by the Note. KeyBank also does not dispute that it agreed to extend the maturity date seventeen times even though Systems West had not fully paid the outstanding principal.

¶ 25 In sum, instead of enforcing the previous maturity date of the loan, the parties agreed to extend the maturity date. Each of the seventeen extensions contained a new maturity date on which the loan must be paid in full, rather than granting Systems West an indefinite extension. And although KeyBank agreed to many extensions, nothing in the Integrated Agreement *required* KeyBank to agree to future extensions. Thus, by the express, unambiguous terms of the Integrated Agreement, the full amount was due on the maturity date. While the parties were free to extend the maturity date, which would extend the time Systems West had to fully repay the loan, the parties were not required to agree to an extension. Although the Business Loan Agreement does not contemplate an express date when KeyBank's obligation for the revolving line of credit terminates, the Note, which is incorporated into the Business Loan Agreement, requires full payment of interest and principal of the loan on a date certain, i.e., the maturity date.

¶ 26 In addition, the January 2001 letter does not create ambiguity. According to the January 2001 letter, the maturity date is "7/31/01, then annually from that point forward." The letter provided for repayment of "[m]onthly interest, principal and interest at maturity." Although the letter contemplates a renewable maturity date, it also clearly provided that Systems West owed monthly interest, principal, and interest on the applicable maturity date.

¶ 27 Systems West's explanation that, as long as Systems West made timely interest payments, KeyBank was required to extend the loan until Systems West paid off the loan in full or until both parties agreed in writing to terminate their agreement, is an illogical interpretation of the Integrated Agreement. The Business Loan Agreement did not provide a certain termination date for the revolving line of credit, whereas the Note and extensions did provide a specific maturity date. Yet, we are able to harmonize the terms of the Integrated Agreement and determine that the Integrated Agreement allowed the Note to be extended at each maturity date without the parties being burdened with renegotiating all of the terms and conditions in the Business Loan Agreement. But as we explained, KeyBank was not required to continuously agree to extend the applicable maturity date. There is simply no other way to reconcile the prominent language in the Note requiring full payment on the maturity date. And Systems West does not provide us with any other reasonable explanation for the existence of the maturity date contained in the Note and each successive extension. Although we agree with Systems West that each extension of the maturity date allowed the parties to renegotiate the interest rate, this alone does not convince us that the Integrated Agreement provided that the loan would have an indefinite term, that Systems West would never be required to repay the loan, and that KeyBank had no choice but to continually extend the maturity date. Essentially, under this view, Systems West could avoid paying the outstanding principal of the loan in perpetuity.

¶ 28 Consequently, on July 15, 2008, Systems West breached the Integrated Agreement when it failed to pay the outstanding principal of the Note, and KeyBank was within its rights to refuse to again extend the maturity date. Not only had Systems West failed to follow a term of the Integrated Agreement, its failure to pay resulted in default as defined by the Integrated Agreement. KeyBank was therefore also within

its rights to terminate its obligations under the Integrated Agreement.

## II.   Systems West's Counterclaims

¶ 29 We are left to resolve whether the district court properly entered summary judgment on all of Systems West's counterclaims, thereby dismissing them as "barred because they seek to impose duties and obligations that are inconsistent with the express terms of the Loan Documents." Systems West contends that the district court erred when it failed to consider parol evidence regarding its counterclaims for breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, and breach of fiduciary duty.

A.   Systems West Inadequately Briefed Its Negligent Misrepresentation and Breach of Fiduciary Duty Counterclaims.

¶ 30 Systems West argues that the parol evidence rule has no bearing on its counterclaim for negligent misrepresentation because it is a tort. We will not reach the question of whether negligent misrepresentation presents an exception to the parol evidence rule, however, because Systems West's argument is inadequately briefed. *See* Utah R.App. P. 24(a)(9) (stating that an adequately briefed argument "contain[s] the contentions and reasons of the appellant with respect to the issues presented, . . . with citations to the authorities, statutes, and parts of the record relied on"). Systems West tackles this issue in a mere paragraph, contending that "the parol evidence rule has no bearing on tort theories, such as [KeyBank's] claims for negligent misrepresentation." Systems West cites out-of-state cases as its sole legal authority to support its contention and then does not provide reasoned analysis based on those cases, including why Utah should adopt the reasoning of other jurisdictions. "A brief is inadequate when it merely contains bald citation[s] to authority [without] development of that authority and reasoned analysis based on that authority. As we have repeatedly noted, we are not a depository in which [a party] may dump the burden of argument and research." *Smith v. Four Corners Mental Health Ctr., Inc.*, 2003 UT 23, ¶ 46, 70

P.3d 904 (alterations in original) (citation and internal quotation marks omitted). As a result, we decline to reach the merits of this issue and affirm the district court's determination that its grant of summary judgment to KeyBank on its breach of contract claims was fatal to Systems West's negligent misrepresentation counterclaim.

¶ 31 We also do not address Systems West's breach of fiduciary duty counterclaim because it too is inadequately briefed. *See* Utah R.App. P. 24(a)(9).

B.   Systems West's Breach of the Implied Covenant of Good Faith and Fair Dealing Counterclaim Fails.

¶ 32 "Extrinsic evidence may be admissible to prove a claim for breach of the covenant of good faith and fair dealing." *Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 14, 94 P.3d 193. However, extrinsic evidence is not admissible to *vary* the explicit terms of an agreement. *See id.* "While a covenant of good faith and fair dealing inheres in almost every contract, . . . this covenant cannot be read to establish new, independent rights or duties to which the parties did not agree ex ante." *Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 45, 104 P.3d 1226. Instead, "these covenants are implied in contracts to protect the express covenants and promises of the contract." *Seare v. University of Utah Sch. of Med.*, 882 P.2d 673, 678 (Utah Ct.App.1994) (internal quotation marks omitted), *cert. denied*, 892 P.2d 13 (Utah 1995).

¶ 33 The parol evidence offered by Systems West varies the Integrated Agreement's terms and, therefore, is not admissible. *See Oakwood Vill.*, 2004 UT 101, ¶ 45, 104 P.3d 1226. Specifically, Systems West offered Halverson's declaration containing her understanding from her oral communications with KeyBank representatives that KeyBank would continue to extend the maturity date of the loan and that KeyBank would not demand full payment until both parties agreed in writing to terminate. This is contrary to what we have determined to be the unambiguous terms of the Integrated Agreement. Accordingly, we hold that the district court correctly excluded Systems West's par-

ol evidence in support of its counterclaim for breach of the implied covenant of good faith and fair dealing. And because this counterclaim was based wholly on parol evidence, the district court properly dismissed it.

CONCLUSION

¶ 34 The Integrated Agreement unambiguously provided for a revolving line of credit. The Integrated Agreement contained a clear maturity date for when the entire loan amount would be due, and under the Integrated Agreement, KeyBank had no obligation to extend the maturity date. Consequently, when KeyBank did not extend the maturity date on July 15, 2008, and Systems West failed to pay the outstanding principal of the loan, Systems West breached the Integrated Agreement and defaulted on the loan. We therefore affirm the district court's summary judgment ruling in favor of KeyBank. We do not reach the merits of Systems West's negligent misrepresentation and breach of fiduciary duty counterclaims because they are inadequately briefed. The district court also properly excluded Systems West's parol evidence offered to support its breach of good faith and fair dealing counterclaim. Without the parol evidence and in light of the implied covenant of the unambiguous Integrated Agreement, Systems West's counterclaim fails as a matter of law.

¶ 35 I CONCUR: STEPHEN L. ROTH, Judge.

¶ 36 I CONCUR IN THE RESULT: J. FREDERIC VOROS JR., Judge.