**2013 UT App 68**

# THE UTAH COURT OF APPEALS

COLONY INSURANCE COMPANY,

*Plaintiff,*

*v.*

THE HUMAN ENSEMBLE, LLC,

*Defendant and Appellant.*

SCOTTSDALE INSURANCE COMPANY,
*Intervenor and Appellee,*

Memorandum Decision
No. 20111013-CA
Filed March 14, 2013

Third District, Salt Lake Department
The Honorable Paul G. Maughan
No. 060910117

Ralph C. Petty and Daniel G. Darger, Attorneys for Appellant
Andrew M. Morse and Richard A. Vazquez, Attorneys for
Appellee

JUDGE STEPHEN L. ROTH authored this Memorandum
Decision, in which JUDGES JAMES Z. DAVIS and
CAROLYN B. MCHUGH concurred.

ROTH, Judge:

¶1 The Human Ensemble, LLC (Human Ensemble) appeals from the entry of summary judgment in favor of Scottsdale Insurance Company (Scottsdale), Human Ensemble's general liability insurance provider. Human Ensemble takes issue with the

district court's decision to consider Scottsdale's renewed motion for summary judgment on Human Ensemble's claims for breach of contract, breach of the covenant of good faith and fair dealing, and negligence, after the court had previously denied the motion. Human Ensemble also asserts that the court's ruling was based on an erroneous understanding of the application of the implied covenant of good faith and fair dealing to insurance contracts. In particular, Human Ensemble asserts that a general liability insurance carrier has a duty to timely investigate the scope of coverage in order to promptly notify the insured when the policy does not cover the property damages incurred. We affirm.

¶2     In October 2005, Human Ensemble purchased two insurance policies: a general liability policy from Scottsdale and a property damage policy from Colony Insurance Company (Colony).[1] In late December 2005, a toilet overflowed in a building owned by Human Ensemble, resulting in several inches of standing water. When cleanup efforts stalled, Human Ensemble's commercial tenants sued for damages because they had "to relocate and incur moving expenses, increased rent, lost profit and other damages." Due to some confusion unexplained in the appellate briefing, Human Ensemble filed a claim in early January 2006 for its cleanup expenses with its liability carrier, Scottsdale, rather than with Colony, its property damage insurer. About this same time, Scottsdale agreed to defend Human Ensemble against the liability claims filed by its tenants. Approximately six weeks later, on February 21, 2006, Scottsdale informed Human Ensemble that it was the general liability insurer only and would not cover Human Ensemble's claims for property damage because it had not issued

---

[1]Human Ensemble actually purchased these policies through an independent insurance agent. Human Ensemble admitted, however, that one of its principals, Gibbs Smith, signed the application for the Colony policy and two of its principals, Smith and Gary Justesen, signed disclosures on both policies.

a property damage policy. The six-week gap between Human Ensemble's submission of the claim and Scottsdale's disclosure became the basis for Human Ensemble's assertion that Scottsdale violated the implied duty of good faith and fair dealing in the general liability policy that is now at issue on appeal. At all times relevant, Scottsdale continued to defend Human Ensemble in the separate liability case brought by its tenants, which was still pending when this appeal was filed.

¶3    In June 2006, Colony, which is not a party to this appeal, filed a complaint seeking a declaratory judgment "that Colony is not obligated, under the terms of the Insurance Contract, to pay . . . any claims, losses, damages, costs, and/or expenses" in connection with the water leak problems. Scottsdale intervened in the declaratory judgment action in January 2008 to have the court determine its own obligations to Human Ensemble. Human Ensemble then counterclaimed against Scottsdale, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing (the bad faith claim), and negligence. Scottsdale responded to Human Ensemble's counterclaims by filing a motion for summary judgment (the original motion). In particular, Scottsdale asserted that its "only obligation, if any, at present is to participate in [Human Ensemble]'s defense" against the tenants, an obligation that it was then fulfilling. Human Ensemble opposed summary judgment, arguing that "Scottsdale had an obligation to promptly investigate [Human Ensemble]'s claims when the claim was made" and that this obligation was breached by the adjuster's failure to notify Human Ensemble for over six weeks that its policy did not cover the property damage caused by the flooding. On July 28, 2009, the district court denied the motion for summary judgment on the basis that there were disputed issues of material fact regarding Scottsdale's duty to investigate.

¶4    Five months later, the case was reassigned to a different judge within the same district. Scottsdale hired new counsel and filed a renewed motion for summary judgment (the renewed motion), asserting that the bad faith claim was not ripe because

Scottsdale had not yet withheld any benefits due under the insurance policy, that Scottsdale had no actionable duty to inform Human Ensemble of the coverage terms in a policy it had sought out and purchased, and that, in any event, Human Ensemble was on notice of the coverage terms by virtue of signing the Colony policy application and the disclosures on both policies. The district court determined that the renewed motion was "procedurally appropriate" because it "presented new legal theories and authorities not previously considered." After hearing argument, it granted the renewed motion for summary judgment.

## I. The District Court Did Not Abuse Its Discretion in Reconsidering the Previous Denial of Scottsdale's Motion for Summary Judgment.

¶5      Human Ensemble argues that the district court should not have reconsidered its denial of the original motion for summary judgment. We conclude, however, that reconsideration was within the district court's discretion. Rule 54(b) of the Utah Rules of Civil Procedure permits a court "to revis[e] at any time before the entry of judgment adjudicating all the claims and rights and liabilities of all the parties" "any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties." Utah R. Civ. P. 54(b). "This is true even when a second judge has taken over the case because the two judges, while different persons, constitute a single judicial office." *PC Crane Serv., LLC v. McQueen Masonry, Inc.*, 2012 UT App 61, ¶ 43, 273 P.3d 396 (citation and internal quotation marks omitted). "Thus, a motion under [r]ule 54(b) is a proper vehicle to ask the court to reconsider its prior denial of a motion for summary judgment." *Trembly v. Mrs. Fields Cookies*, 884 P.2d 1306, 1311 (Utah Ct. App. 1994).

¶6      Whether to reconsider a prior ruling is ordinarily within the sound discretion of the district court, as only the parties of a case are bound by the court's nonfinal decisions. *Mid-America Pipeline Co. v. Four-Four, Inc.*, 2009 UT 43, ¶ 12, 216 P.3d 352 ("While a case

remains pending before the district court prior to any appeal, the parties are bound by the court's prior decision, but the court remains free to reconsider that decision." (citation and internal quotation marks omitted)). Factors that weigh in favor of the district court's decision to reconsider include, but are not limited to, (1) the matter being presented in a new or different light, (2) a change in the governing law, (3) the discovery of new evidence, or (4) a conviction that the prior decision was clearly erroneous.[2] *Trembly*, 884 P.2d at 1311.

¶7      Because the case was not yet fully resolved, the district court "was not required to reconsider . . . [nor] was [it] forbidden from doing so." *See Mid-America Pipeline Co.*, 2009 UT 43, ¶ 15. The district court reasoned that reconsideration was appropriate because the presentation of "new legal theories and authorities" in the renewed motion allowed the court "to fully assess the merits of Scottsdale's position." The court's decision to reconsider therefore falls within the broad scope of its discretion, and we will not disturb it. *U.P.C., Inc. v. R.O.A. Gen., Inc.*, 1999 UT App 303, ¶ 57, 990 P.2d 945 ("A trial court's decision to grant or deny a motion to reconsider summary judgment is within the discretion of the trial court, and we will not disturb its ruling absent an abuse of discretion." (citation and internal quotation marks omitted)).

II. The District Court Appropriately Granted Summary
Judgment in Favor of Scottsdale on the Bad Faith Claim.

¶8      We next address Human Ensemble's claim that the district court erred in granting summary judgment on the bad faith claim.

---

[2]Certain of these factors "function only to dictate when the district court has no discretion but rather must reconsider a previously decided, unappealed issue." *Mid-America Pipeline Co. v. Four-Four, Inc.*, 2009 UT 43, ¶ 14, 216 P.3d 352 (emphasis omitted) (listing those factors). We conclude that none of the factors mandated reconsideration under the circumstances.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "We review a district court's decision to grant summary judgment for correctness, with no deference to the district court's conclusions." *State ex rel. School & Inst. Trust Land Admin. v. Mathis*, 2009 UT 85, ¶ 10, 223 P.3d 1119.

¶9     The district court granted summary judgment to Scottsdale on the basis "that the duty of good faith extends only to benefits actually provided for under the applicable insurance policy" and Scottsdale had not denied Human Ensemble any of the bargained-for benefits. Human Ensemble argues that this decision was incorrect because a breach of the insurance contract is not a prerequisite to a claim of breach of the implied covenant of good faith and fair dealing. We agree with Human Ensemble that a breach of contract is not necessary for a claim of bad faith to arise. *See Christiansen v. Farmers Ins. Exch.*, 2005 UT 21, ¶ 13, 116 P.3d 259 (recognizing that an insurer could be liable for bad faith even if the insurer ultimately fulfilled its obligations under the policy because if the courts conditioned a bad faith claim "on violation of the express terms of the contract, the insurer could escape liability for its failure to honor the good faith dut[ies]"). We nevertheless affirm the district court's decision to grant summary judgment on the basis that the duty of investigation that Human Ensemble seeks to impose upon Scottsdale is outside the scope of the insurance contract. *See generally Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 ("[A]n appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court . . . ." (citation and internal quotation marks omitted)).

¶10     The covenant of good faith and fair dealing "inheres in almost every contract" and is "implied in contracts to protect the express covenants and promises of the contract." *KeyBank Nat'l Ass'n v. Systems W. Computer Res., Inc.*, 2011 UT App 441, ¶ 32, 265

P.3d 107 (citations and internal quotation marks omitted). In Utah, this implied covenant imposes a duty "not to intentionally or purposely do anything [that] will destroy or injure the other party's right to receive the fruits of the contract and to . . . act consistently with the agreed common purpose and the justified expectations of the other party." *United States Fid. & Guarantee Co. v. United States Sports Specialty Ass'n*, 2012 UT 3, ¶ 20, 270 P.3d 464 (alteration and omission in original) (footnote citation and internal quotation marks omitted). In the insurance context,

> the implied obligation of good faith performance contemplates, at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim. The duty of good faith also requires the insurer to deal with laymen as laymen and not as experts in the subtleties of law and underwriting and to refrain from actions that will injure the insured's ability to obtain the benefits of the contract.

*Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985) (citations and internal quotation marks omitted) (addressing good faith and fair dealing obligations in a first-party insurance arrangement); *see also Black v. Allstate Ins. Co.*, 2004 UT 66, ¶ 20, 100 P.3d 1163 (addressing the same obligations in a third-party insurance arrangement). By requiring that the insurer act reasonably and in good faith in resolving the insured's claims, these implied duties protect an insured's expectation that he will receive the benefits he reasonably anticipated when he obtained the insurance policy. *See generally Pixton v. State Farm Mut. Auto Ins. Co. of Bloomington, Ill.*, 809 P.2d 746, 748–49 (Utah Ct. App. 1991) (explaining the reasons for imposing good faith duties to the insured on insurance companies).

¶11  *Black v. Allstate Insurance Co.*, 2004 UT 66, 100 P.3d 1163, provides an example of how the implied duty to diligently investigate has been applied in Utah. In *Black*, the district court granted the insurance company's motion for summary judgment on the insured's claim that his automobile insurance carrier violated the duty to reasonably investigate when it denied his accident claim on the basis that he was primarily at fault without first having contacted the only eyewitness. *Id.* ¶¶ 1, 3, 7. The Utah Supreme Court, in the course of reversing summary judgment, explained what the duty involves: in order to provide the insured with automobile accident coverage "by virtue of the insurance policy," "Allstate at least had an obligation to Black to diligently investigate the facts [of the accident], and then act fairly and reasonably in evaluating and settling the claim." *Id.* ¶¶ 20, 22. In carrying out this duty, the focus is on whether the insurer's investigation was "fair and reasonable" given "the extent and availability of evidence, whether available evidence is collected and witnesses are contacted, common practice in the industry, and clarity of the evidence with regard to issues of liability." *Id.* ¶ 21.

¶12  Human Ensemble asserts that Scottsdale breached the implied duty to investigate, not by failing to adequately inquire into what caused the water leak and the nature and extent of the resulting damage, but by failing to notify Human Ensemble for over six weeks that its general liability policy did not cover property damage. Specifically, Human Ensemble claims that had Scottsdale "diligently investigate[d] the facts . . . to determine whether [the] claim [wa]s valid," *see Beck*, 701 P.2d at 801, it would have realized earlier that the insurance coverage Human Ensemble purchased from Scottsdale did not cover property damage but only liability. Thus, according to Human Ensemble, the duty to investigate a claim is not confined to the facts underlying the claim but requires the insurer to examine the policy's coverage upon receiving a claim and promptly notify the insured if the claim does not fit within the policy's general scope.

¶13    When a claim appears at least nominally to fall within the scope of the subject matter of the policy, it makes sense to expect the insurer not only to investigate the underlying facts, but also to promptly determine whether the claim ought to be denied because of some exclusion or exception in the policy. Such an interpretation of the implied duty to diligently investigate ensures that an insured, who reasonably might expect a property damage policy to cover damages to personal property from a water damage incident, is timely put on notice that the insurer considers the damages to fall under an exclusion or exception, for example, where the policy excludes damages to property owned by third parties. The insurer may be in an advantaged position with regard to understanding the details of coverage, and recognition of such a duty ensures that the insurer does "not . . . intentionally or purposely do anything [that] will destroy or injure the [insured]'s right to receive the fruits of the contract." *See United States Fid. & Guarantee*, 2012 UT 3, ¶ 20 (first alteration in original) (footnote citation and internal quotation marks omitted). But while the obligation to investigate the facts in order to resolve a claim may also include a duty to promptly determine if a claim within the policy's nominal subject matter is excepted or excluded by its detailed or technical terms, Human Ensemble has not persuaded us that this duty extends so far as to encompass an obligation to inform the insured of the general type of policy that the insured has purchased. Certainly, such an expectation does not seem to be in the same category as the duty to diligently investigate the facts and circumstances of a claim that at least arguably falls within coverage in order to properly defend or resolve the claim.

¶14    And while it is reasonable to expect that an insurer like Scottsdale would determine early in the process whether an insured's claim falls within the general subject matter of its liability policy or involves a subject, such as a property damage claim, that is clearly outside the broad scope of the policy, that expectation arises from a sense of the insurer's own self-interest rather than from any notion of a special duty to the insured under the circumstances. It was the insured in the first place who purchased

a liability policy from Scottsdale and a separate property damage policy from Colony. It therefore seems as reasonable to expect that Human Ensemble would be responsible for keeping track of which insurance company provided which type of coverage as it would that Scottsdale would do so. *See, e.g., John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1207–08 (Utah 1987) ("[O]ne party to an agreement does not have a duty to ensure that the other party has a complete and accurate understanding of all terms embodied in a written contract."); *cf. DeBry v. Valley Mortg. Co.*, 835 P.2d 1000, 1007 (Utah Ct. App. 1992) (explaining, in the context of a fraud claim, that "[a] duty to speak will not be found where the parties deal at arm's length, and where the underlying facts are reasonably within the knowledge of both parties," for "[u]nder such circumstances, [a party] is obliged to take reasonable steps to inform himself, and to protect his own interests" (citation and internal quotation marks omitted)).

¶15 Indeed, Human Ensemble admits that it purchased a general liability policy from Scottsdale and a property damage policy from a separate company, Colony. While Human Ensemble purchased these insurance policies through an independent agent, it is undisputed that one of its principals, Gibbs Smith, signed the application for Human Ensemble's property damage coverage with Colony, and Smith and another principal, Gary Justesen, both signed policy disclosures on the Scottsdale liability policy that described the policy's scope of coverage. In addition, the Scottsdale policy itself clearly identifies commercial general liability in the "Coverage Part(s)" and expressly excludes commercial property damage as "NOT COVERED." Further, all of the policy declarations and forms address general liability only. Human Ensemble therefore was on notice of the scope of its Scottsdale insurance policy and was aware that it had purchased property damage coverage from Colony, not Scottsdale. *See John Call Eng'g, Inc.*, 743 P.2d at 1208 (explaining that because "each party has the burden to read and understand the terms of a contract before he or she affixes his or her signature to it," he or she is presumed to have knowledge of its content).

¶16     As a consequence, we can see no basis for concluding that an insurer's implied duty "to refrain from actions that will injure the insured's ability to obtain the benefits of the contract" would make Scottsdale liable for failure to timely discover and disclose to Human Ensemble that it had not purchased property damage coverage from Scottsdale, but from another insurer altogether. *See Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985). Such an obligation does not seem to fall within the good faith duty, which "protect[s] the express covenants and promises of the contract," because it is outside the scope of the bargained-for benefits of the insurance contract that Human Ensemble actually purchased. *See KeyBank Nat'l Ass'n v. Systems W. Computer Res., Inc.*, 2011 UT App 441, ¶ 32, 265 P.3d 107 (citation and internal quotation marks omitted). To the contrary, Human Ensemble is asking that an additional duty be imposed upon Scottsdale to be legally responsible to Human Ensemble for its own error in filing its property damage claim with the wrong carrier and under the wrong policy. Imposition of such an obligation would extend the duty of good faith and fair dealing beyond its intended purpose of "protect[ing] the express covenants and promises of the contract."[3] *See id.* (citation and internal quotation marks omitted); *see also United States Fid. & Guarantee Co. v. United States Sports Specialty Ass'n*, 2012 UT 3, ¶ 20, 270 P.3d 464 (characterizing the implied duty of good faith and fair dealing as requiring one party to a contract "not to intentionally or purposely do anything [that] will destroy or injure the other party's right to receive the fruits of the

---

[3]Human Ensemble has also failed to identify what harm actually resulted from Scottsdale's failure to notify Human Ensemble for over six weeks that it lacked coverage under the policy. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012) (requiring a showing of harm to establish a breach of the covenant of good faith and fair dealing by an insurance company); *Coventry Assocs. v. American States Ins. Co.*, 961 P.2d 933, 935 (Wash. 1998) (same for first-party insurance claims).

contract" (alteration in original) (footnote citation and internal quotation marks omitted)). Accordingly, we affirm the grant of summary judgment to Scottsdale on the bad faith claim.[4]

### III. Scottsdale's Request for Attorney Fees Incurred on Appeal Is Denied, but It May Recover Its Costs.

¶17    Scottsdale seeks reimbursement for attorney fees and costs incurred on appeal on the basis that the "'appeal is obviously without any merit and has been taken with no reasonable likelihood of prevailing, and results in delayed implementation of the judgment of the lower court; increased costs of litigation; and dissipation of [court] time and resources.'" (Quoting *Porco v. Porco*, 752 P.2d 365, 369 (Utah Ct. App. 1988).) Although we ultimately find Human Ensemble's claims to be without merit, they are not frivolous. Attorney fees are therefore denied. Costs are awarded to Scottsdale in accordance with rule 34(a) of the Utah Rules of Appellate Procedure.

¶18    We affirm the grant of summary judgment to Scottsdale. Attorney fees to Scottsdale are denied, but it may recover its costs.

---

[4]Because we uphold the grant of summary judgment in favor of Scottsdale on Human Ensemble's failure to demonstrate that notice of the policy's coverage was within the scope of the implied covenant of good faith and fair dealing, we do not address Scottsdale's alternative bases for affirming the judgment.