**2017 UT App 142**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DYLAN DEVON GIBSON,
Appellant.

Opinion
No. 20150353-CA
Filed August 3, 2017

Third District Court, West Jordan Department
The Honorable Bruce C. Lubeck
No. 141400554

Alexandra S. McCallum and Wesley J. Howard,
Attorneys for Appellant

Sean D. Reyes and William M. Hains, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
STEPHEN L. ROTH and MICHELE M. CHRISTIANSEN concurred.[1]

TOOMEY, Judge:

¶1     Dylan Devon Gibson pleaded guilty to theft by receiving stolen property, a third degree felony. In connection with the offense, the district court ordered Gibson to pay $13,000 in

---

1. Judge Stephen L. Roth participated in this case as a member of the Utah Court of Appeals. He retired from the court before this decision issued.

restitution to Rocky Mountain Power (RMP).[2] Gibson appeals, arguing the restitution award is not legally justified. We agree and therefore reverse and remand.

¶2    Early in the morning on February 17, 2014, an unknown person cut through the fence of an RMP substation and stole approximately 200 feet of copper ground wire and accompanying brass fittings. Later that day, RMP reported the theft and damage to the police. The following day, Gibson sold the same length of copper wire and brass fittings to Utah Metal Works, a scrap metal recycler, for $65. Suspicious of the transaction, a Utah Metal Works employee contacted the West Jordan Police Department. The police investigated the wire and fittings, photographed the materials, and sent them to RMP for its review.

¶3    Three RMP employees viewed the images and determined the wire and fittings sold to Utah Metal Works were indeed the same wire and fittings that were stolen from RMP's substation on February 17. The wire was painted gray, RMP's standard practice for decreasing the resale value of copper wire. In addition, the length and size of the wire sold to Utah Metal Works were identical to the wire stolen from RMP; the number of fittings also matched.

¶4    Gibson was arrested and charged with one count of theft by receiving stolen property, a third degree felony. At the time of his arrest, Gibson was riding a bike with a set of bolt cutters used as a makeshift seat. Gibson claimed that a friend had given him the bolt cutters and the wire and fittings. He admitted he sold the wire and fittings to Utah Metal Works but denied

---

2. The court also ordered Gibson to pay $65 in restitution to Utah Metal Works, but he concedes that portion of the order was appropriate.

having anything to do with the initial theft from RMP's substation. Consistent with this statement, Gibson pleaded guilty based on the following facts:

> On or about February 18, 2014, in Salt Lake County, [Gibson] sold several pieces of copper wiring and fittings to a scrap dealer. [Gibson] had reason to believe the items, valued at less than $500.00, had been stolen. Within the previous ten years, [Gibson] has twice been convicted of enhancing offenses.

In his plea agreement, Gibson admitted to the following elements:

1) On or about February 18, 2014
2) in Salt Lake County
3) Dylan D. Gibson
4) having twice been convicted, within the past 10 years of enhancing offenses
5) disposed property of another
6) valued at less than $500.00
7) while knowing or believing the property was stolen

Gibson further agreed to pay "all valid restitution claims within the limit of the law."

¶5 The district court sentenced Gibson to a suspended prison term of zero to five years, placed him on probation, and ordered him to serve 210 days in jail. The court ordered him to pay $65 in restitution to Utah Metal Works but left open the issue of restitution as to RMP.

¶6 The State submitted a motion for restitution on behalf of RMP and a supporting letter from RMP's assistant general counsel outlining its damages. RMP estimated its loss equaled

$13,000: "$700 for replacement of the 200' 4/0 [gauge] copper materials, $300 for fence grounds and other miscellaneous connectors and $12,000.00 in labor expense." Gibson objected, arguing an award of restitution to RMP was not legally justified, because Gibson admitted only to receiving the stolen items; he was not charged with or responsible for the initial theft from RMP.[3]

¶7    After considering the parties' written submissions and oral arguments, the court found that RMP's itemized breakdown of its losses was accurate, and it ordered Gibson to pay RMP the full $13,000 in restitution. The court explained that although it did not know who committed the initial theft of the materials, Gibson's selling of the materials within a short period after the initial theft was "as effectual" as the initial taking because of the "phenomenon of the way [copper] is moved." Gibson appeals.

¶8    Gibson contends the district court erred in ordering him to pay restitution to RMP because "[a] defendant cannot be ordered to pay restitution for criminal activities for which the defendant did not admit responsibility, was not convicted, or did not agree to pay restitution." Normally, an appellate court "will not disturb a trial court's restitution order unless it exceeds that prescribed by law or otherwise abused its discretion"; however, the "proper interpretation of a statute is a question of law," which we review for correctness. *State v. Mast*, 2001 UT App 402, ¶ 7, 40 P.3d 1143 (citations and internal quotation marks omitted). We conclude that the resolution of the question presented here requires us to interpret the meaning of the

---

3. Before the parties briefed the district court on the RMP restitution issue, in an order to show cause hearing, the State acknowledged that, after reviewing the relevant case law, Gibson had a strong argument and that he "might prevail" on this issue.

restitution statute. *See* Utah Code Ann. § 76-3-201 (LexisNexis Supp. 2016).

¶9 "When a person is convicted of criminal activity that has resulted in pecuniary damages, . . . the court shall order that the defendant make restitution to the victims, or for conduct for which the defendant has agreed to make restitution as a part of a plea agreement." *Id.* § 76-3-201(4)(a). In this context, "criminal activity" includes "any other criminal conduct for which the defendant admits responsibility to the sentencing court." *Id.* § 76-3-201(1)(b). "[R]estitution can include payment for crimes not listed in the information so long as a defendant admits responsibility or agrees to pay restitution." *State v. Bickley*, 2002 UT App 342, ¶ 9, 60 P.3d 582.

¶10 When determining whether a defendant has "admitted responsibility," the sentencing court must not "analyze a defendant's state of mind" or make any inferences about the defendant's culpability; rather, the court must focus on the admissions made by the defendant. *See Mast*, 2001 UT App 402, ¶ 13 (citation and internal quotation marks omitted). Moreover, responsibility must be "firmly established, much like a guilty plea." *Id.* (citation and internal quotation marks omitted).

¶11 Regardless of whether a defendant has been convicted of a certain offense by a jury or by a guilty plea or has otherwise admitted responsibility to a particular criminal activity, restitution awards are limited by the pecuniary damages caused by the admitted conduct. *See State v. Brown*, 2009 UT App 285, ¶ 10, 221 P.3d 273 ("[T]o include an amount in a restitution order, the State must prove that the victim has suffered economic injury and that the injury arose out of the defendant's criminal activities."); *see also* Utah Code Ann. § 76-3-201(4)(a) ("When a person is convicted of criminal activity that has *resulted in* pecuniary damages, . . . the court shall order that the defendant make restitution to the victims . . . ." (emphasis

added)). To determine whether a restitution award is appropriate, and to what extent, courts apply a "modified 'but for' test." *Brown*, 2009 UT App 285, ¶ 11. This test "requires that (1) the damages 'would not have occurred but for the conduct underlying the . . . [defendant's] conviction' and (2) the 'causal nexus between the [criminal] conduct and the loss . . . is not too attenuated (either factually or temporally).'" *Id.* (alterations and omission in original) (quoting *State v. McBride*, 940 P.2d 539, 544 n.5 (Utah Ct. App. 1997) (additional citation and internal quotation marks omitted).

¶12   Gibson argues that "[b]ecause [his] sale of the stolen property did not cause the damages claimed by RMP, [he] could only be responsible for the damages if he admitted involvement in the initial taking or agreed to pay RMP restitution" and that "[he] did neither." Although the State "does not suggest that Gibson pleaded guilty to or otherwise accepted responsibility for taking the material from the substation," the State contends "it was not necessary for him to do so to establish his culpability for theft of the material." The State argues the nature of Utah's consolidated theft statute, the "economic reality" of the market for stolen copper materials, and the possibility that Gibson may have acted in tandem with the initial thief to facilitate the sale to Utah Metal Works, compel a conclusion that the restitution award was appropriate. We disagree.

¶13   Utah's consolidated theft statute provides that "conduct denominated theft in this part constitutes a single offense embracing the separate offenses such as those heretofore known as larceny, larceny by trick, larceny by bailees, embezzlement, false pretense, extortion, blackmail, receiving stolen property." Utah Code Ann. § 76-6-403 (LexisNexis 2012). In the State's view, when Gibson pleaded guilty to theft by receiving stolen property, he also admitted responsibility for the initial theft because all categories of theft are considered a single offense

under the consolidated theft statute. The State's argument suffers from a number of problems.

¶14 The State ignores the purpose and effect of the consolidated theft statute. The statute's purpose is "to prevent a defendant from escaping an otherwise valid theft charge on a mere technicality in the pleadings." *State v. Bush*, 2001 UT App 10, ¶ 15, 47 P.3d 69. "'[A]ll that is now required is to simply plead the general offense of theft and the accusation may be supported by evidence that it was committed in any manner specified in sections 404 through 410 of the Code . . . .'" *Id.* ¶ 12 (omission in original) (quoting *State v. Taylor*, 570 P.2d 697, 698 (Utah 1977)). Moreover,

> "[i]n order to prevent a charge based on one method of unlawfully obtaining property from being defeated by the defense that the property was acquired by a different unlawful method, the statute allows the [State] to introduce evidence at trial of any form or theft regardless of the form of theft charged, but always subject to the defendant's rights to fair notice and an opportunity to defend."

*Id.* ¶ 15 (quoting *Commonwealth v. Martin*, 577 A.2d 200, 203 (Pa. Super. Ct. 1990)). Thus, although the consolidated theft statute allows a prosecutor to plead a general theft offense and then prove the elements of any type of theft enumerated in the Utah Code or to amend the information from one theory of theft to another, provided the amendment does not violate the defendant's right to fair notice and an opportunity to defend, the State must ultimately prove all the elements of one type of theft in order to obtain a conviction. The consolidated theft statute does not allow a conviction of one type of theft to carry with it an admission of responsibility as to all forms of theft enumerated under the Utah Code.

¶15   Theft by receiving stolen property occurs when a person "receives, retains, or disposes of the property of another knowing that it has been stolen, or believing that it probably has been stolen." Utah Code Ann. § 76-6-408(1) (LexisNexis Supp. 2016). In pleading guilty to theft by receiving stolen property, Gibson admitted only that he sold several pieces of copper wiring and fittings to a scrap dealer while having reason to believe the items had been stolen. Gibson did not thereby admit responsibility for the initial theft.

¶16   Even if, by pleading guilty to theft by receiving stolen property, Gibson somehow admitted responsibility for generic theft, an award for restitution is not appropriate, as we previously explained, unless the defendant's conduct meets the "modified 'but for'" test of causation. *See Brown*, 2009 UT App 285, ¶ 11. The State claims Gibson's conduct satisfies this test because "[b]y selling the property, Gibson also facilitated its initial taking." The State explains that, often times, a person who wishes to steal copper materials turns to an accomplice to help facilitate the sale. This is because, to sell copper materials to a scrap metal recycler, a person must be at least eighteen years old, present photographic identification, and be photographed by the recycler to determine whether the person is a repeat seller. And if that person is "underage, wants to stay under the radar, or would be recognized by the scrap metal recycler as someone who has sold stolen material in the past," he or she may recruit an accomplice to make the sale. Although some criminals may use this scheme, there is no evidence to suggest Gibson acted as an accomplice, and he certainly did not admit to such conduct.

¶17   The State has not satisfied the modified but-for test. The State argues that by depriving RMP of its materials and selling them to Utah Metal Works, "Gibson caused not only the loss of the material, he also caused the need for Rocky Mountain Power to expend $12,000 worth of labor to replace it." The State's basis for reaching this conclusion is dubious.

*State v. Gibson*

¶18 The State suggests that in addition to the small gap between the time the materials were stolen and the time Gibson sold them, Gibson's mere participation in the market for stolen copper wire is sufficient for this court to conclude Gibson was a but-for cause of RMP's losses, because "without the prospect of a quick sale, the initial thief would not have stolen such large quantities of metal." But in reaching this conclusion, the State inverts the required analysis. When analyzing a but-for causation question, we must "inquire as to what would have occurred if the [defendant] had not engaged in the . . . conduct." *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 114, 372 P.3d 629 (omission in original) (citation and internal quotation marks omitted). As Gibson correctly points out, if he had not sold the materials, RMP would be in the same position: it would still need to expend the $13,000 to replace and install the materials. Thus, the State has not met its burden under the modified but-for test, and the restitution award to RMP "exceeds that prescribed by law." *See State v. Mast*, 2001 UT App 402, ¶ 7, 40 P.3d 1143 (citation and internal quotation marks omitted).

¶19 We conclude Gibson did not admit responsibility for RMP's losses, and the State has not met its burden to show that Gibson was the but-for cause of them. We therefore reverse the district court's order of restitution as it relates to RMP's losses and remand to the district court to reduce its order consistent with this decision.