**2018 UT App 101**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
CHANDRA PARRY OLIVER,
Appellant.

Opinion
No. 20160582-CA
Filed June 7, 2018

Third District Court, West Jordan Department
The Honorable Charlene Barlow
No. 151400755

Marshall M. Thompson, Christine Seaman, and
Alexandra S. McCallum, Attorneys for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGE
JILL M. POHLMAN concurred. JUDGE MICHELE M. CHRISTIANSEN
concurred, with opinion.

HARRIS, Judge:

¶1 Chandra Parry Oliver's boyfriend (Boyfriend) invited two young men—one eighteen years old, the other nineteen years old—over to Oliver's house for the purpose of smoking methamphetamine. After they arrived, all four of them smoked methamphetamine together. Some time later, the young men went into Oliver's bathroom and, without Oliver's knowledge, swallowed additional methamphetamine. One of the young men (Victim) overdosed, and later died.

¶2 Oliver eventually pled guilty to reckless endangerment, a class A misdemeanor. The district court, at the State's request,

ordered Oliver to pay Victim's medical and funeral expenses as restitution. Oliver appeals that restitution order, arguing that the State did not present sufficient evidence demonstrating that her actions were the proximate cause of Victim's death, and therefore she should not have been required to pay restitution. We find Oliver's arguments persuasive, at least in part, and therefore vacate the restitution order and remand this case to the district court for further proceedings.

BACKGROUND

¶3 On November 16, 2013, Victim (an eighteen-year-old male) and his friend (Friend) called Boyfriend and asked if they could come over to the house in which Oliver and Boyfriend lived so that they could "get warm" and "smoke a bowl of [m]eth." Boyfriend granted them permission, and so Victim and Friend came over to Oliver's house. Once they arrived, Oliver, Boyfriend, Victim, and Friend all smoked methamphetamine together.

¶4 Soon thereafter, Victim and Friend went into the bathroom at Oliver's house. At the time, Oliver did not know what they were doing in the bathroom, but as it turned out they spent some of their time there ingesting additional methamphetamine through a method known as "parachuting," a technique where an individual wraps methamphetamine in toilet paper and then swallows it.

¶5 Later, after emerging from the bathroom, Victim and Friend both "started acting funny." Oliver and Boyfriend "had another guy get [Victim] out to his car and go to the hospital," but for reasons unclear from the record, that effort failed. Eventually, another person present called 911, and the paramedics came and took Victim to the hospital. Victim later died.

¶6 The State filed six criminal charges against Oliver, including one count of obstructing justice, a third degree felony,

*see* Utah Code Ann. § 76-8-306(1) (LexisNexis 2017); two counts of possession or use of a controlled substance, one charged as a third degree felony, and one charged as a class B misdemeanor *see id.* § 58-37-8(2)(a)(i); two counts of reckless endangerment, both class A misdemeanors, *see id.* § 76-5-112; and one count of possession of drug paraphernalia, a class B misdemeanor, *see id.* § 58-37a-5(1).[1] Eventually, after plea negotiations, Oliver agreed to plead guilty to possession of a controlled substance (reduced to a class A misdemeanor) and one count of reckless endangerment (also a class A misdemeanor) in exchange for the State dropping the remaining charges.

¶7 On the date set for preliminary hearing, Oliver elected to waive her right to that hearing and enter her plea instead. Before it accepted Oliver's plea, however, the district court asked about the factual basis for the plea, and Oliver's counsel stated as follows:

> On November 16th of 2013 in Salt Lake County, Ms. Oliver was in possession and she used methamphetamine. Additionally, she was residing in a home where she allowed two other people to use methamphetamine that *resulted in the overdose* of one of those . . . individuals.

(Emphasis added.) After Oliver's counsel recited the factual basis, the district court asked Oliver, "Is that what happened, Ms. Oliver?" Oliver answered "Yes." At that point, the court accepted and entered Oliver's guilty plea.

¶8 After Oliver pled guilty, she provided the following statement to probation officers who were preparing a presentence report for the court:

---

1. Boyfriend also faced criminal charges stemming from the same incident, and eventually pled guilty to one count of reckless endangerment, a class A misdemeanor.

> [Friend and Victim] had called my boyfriend at the times phone to see if they could come into our house to get warm + smoke a bowl of Meth and he told them yes. They came in and we all smoked and then [Friend and Victim] went into the bathroom and swallowed some meth and I did not know this at the time then the guys both started acting funny and we had another guy [there] get [Victim] out to his car and go to the hospital but then [another friend] [ended] up having to call 911 and the paramedics came + took [Victim] to [the] hospital where he later had passed.

¶9    The district court held a sentencing hearing in February 2016. The court ordered Oliver to serve 120 days in jail (with the remainder of two one-year jail terms suspended), and to serve twenty-four months on probation, and imposed various terms and conditions of probation. The court ordered that the issue of restitution would "remain open" for ninety days. A few weeks later, the State filed a motion seeking an order compelling Oliver to pay $14,151.64 in restitution to Victim's father to pay for Victim's hospital and funeral expenses. The State also asked the court to order that the restitution amount be paid jointly and severally by Oliver and Boyfriend.

¶10    Oliver objected to the State's restitution request, arguing generally that she "did not admit to facts which constitute the proximate cause of [Victim's] death." Specifically, Oliver's causation objection was based entirely upon a superseding cause argument, in which Oliver asserted that Victim's "own ingestion of a large quantity of methamphetamine . . . was the proximate cause of his death" and that it was Victim's own decision to swallow methamphetamine that was "the direct and proximate cause of his hospitalization and ultimate death resulting in the restitution amounts." Oliver made no specific argument that the State had failed to prove a causal link between Victim's overdose and Victim's death, and made no specific argument that she

should not be required to pay restitution jointly and severally with Boyfriend.

¶11 After briefing, the district court held a hearing on the State's restitution request. The hearing was very short; the entire transcript is only six pages long. Neither side presented any actual evidence, whether through witnesses or through documents, and the court heard no testimony from any witness. Instead, attorneys for the State and for Oliver made legal arguments regarding causation. Oliver's attorney reiterated the superseding cause argument made in the briefing, arguing generally that Oliver's conduct was not "the proximate cause of [Victim's] death," and arguing specifically that "the proximate cause of [Victim's] death unfortunately and practically was his own independent decision to ingest a lethal quantity of methamphetamine." As in her briefing, Oliver made no specific argument that the State had failed to demonstrate a causal link between the overdose and the death and made no specific argument about joint and several liability. At the conclusion of the hearing, the district court took the matter under advisement.

¶12 About a week later, the district court issued a decision granting the State's request for restitution, and ordering Oliver to pay Victim's hospital and funeral expenses. The court reasoned that Oliver "allowed the victim to come to her home to smoke methamphetamine" and that "[t]his in itself was recklessly engaging in conduct that created a substantial risk of death or serious bodily injury to the victim." The court added that "[i]t was also foreseeable that allowing someone to ingest methamphetamine either by smoking or swallowing could lead to death or serious bodily injury."

ISSUES, STANDARDS OF REVIEW, AND PRESERVATION

¶13 Oliver now appeals the district court's restitution order, and asks us to consider two issues. First, Oliver argues that the district court should not have ordered her to pay restitution,

because (according to Oliver) the State failed to present sufficient evidence to prove that Oliver's actions were the proximate cause of Victim's overdose or death. The State asserts that this entire argument is unpreserved. To preserve an issue for appellate review, the issue "must be specifically raised, in a timely manner, and must be supported by evidence and relevant legal authority." *Donjuan v. McDermott*, 2011 UT 72, ¶ 20, 266 P.3d 839. "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on [it]." *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 (quotation simplified). We agree with the State that part of Oliver's first argument is unpreserved.

¶14 The lack-of-causation argument that Oliver advances on appeal has two components: (1) that the State failed to present sufficient evidence of a causal link between Oliver's actions and Victim's overdose, and (2) that the State failed to present sufficient evidence of a causal link between Victim's overdose and Victim's death. As we explain below, the second part of Oliver's challenge on appeal—that there is not a sufficient causal link between Victim's overdose and Victim's death—was not preserved below; indeed, we conclude that any error that the district court may have made on this point was invited by Oliver. Therefore, we cannot disturb it on appeal.

¶15 The other part of Oliver's lack-of-causation argument, however, was preserved. As discussed below, we agree with Oliver that she adequately presented to the district court her argument, now advanced on appeal, that the State failed to present evidence of a sufficient causal link between Oliver's conduct and Victim's overdose. Accordingly, we review that part of the district court's restitution determination as we would ordinarily do. "[I]n the case of restitution, a reviewing court will not disturb a district court's determination unless the court exceeds the authority prescribed by law or abuses its discretion." *State v. Laycock*, 2009 UT 53, ¶ 10, 214 P.3d 104. "To the extent that the district court made legal determinations in connection with its restitution analysis, we review those legal

determinations for correctness." *State v. Jamieson*, 2017 UT App 236, ¶ 13, 414 P.3d 559 (citing *State v. Brooks*, 908 P.2d 856, 858–59 (Utah 1995)).

¶16 Second, Oliver argues that the district court erred by ordering that the restitution be paid jointly and severally by and between Oliver and Boyfriend. Oliver contends that she preserved this argument for appeal when her counsel "argued repeatedly that . . . Oliver could only be held liable for pecuniary damages that were proximately caused by her admitted criminal actions, not the actions of others." The State disagrees, and points out that Oliver "cites no place where she pointed the trial court to the statutory authority she now says clearly shielded her from joint and several liability." We agree with the State that Oliver did not preserve this second argument for appeal.

¶17 In opposition to the State's restitution request, Oliver argued generally that she did not proximately cause Victim's death, and argued specifically that Victim's own conduct was a superseding cause of his death. She did not explicitly alert the district court to her position that she could not be jointly and severally liable with Boyfriend; nor did she cite any legal authority in support of the legal theory she now advances on appeal. And at oral argument before the district court, Oliver made the same arguments that she made in her briefing in opposition to the State's restitution request. As with her briefing, during oral argument Oliver did not specifically argue that she could not be jointly and severally liable with Boyfriend. We conclude that Oliver's general proximate causation challenge was not sufficiently specific to alert the district court that Oliver intended to raise the legal theory that she could not be jointly and severally liable with Boyfriend. Therefore, the issue is unpreserved.

¶18 Oliver nonetheless asks us to review this issue for plain error. To prevail under plain error review, Oliver must establish that (1) an error exists, (2) the error should have been obvious, and (3) the error prejudiced her. *Id.* ¶ 20.

ANALYSIS

I. Proximate Causation

¶19    Under Utah's Crime Victims Restitution Act,[2] "the court shall order that the defendant make restitution to victims of crime" when that defendant "enters into a plea disposition or is convicted of criminal activity that has *resulted in* pecuniary damages." Utah Code Ann. § 77-38a-302(1) (LexisNexis 2017) (emphasis added). Pecuniary damages, in turn, are defined as "all demonstrable economic injury . . . including those which a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities." *Id.* § 77-38a-102(6).

¶20    While the statute certainly requires some causal connection between the crime and the pecuniary damages, *see id.* § 77-38a-302(1) (stating that restitution is available when "criminal activity" has "resulted in pecuniary damages"), the statute does not provide any additional guidance as to the strength of the causal connection required. Over the past several decades, this court often applied a "modified 'but for' [causation] test" to determine whether criminal activity resulted in pecuniary damages. *See State v. Brown*, 2009 UT App 285, ¶ 11, 221 P.3d 273, *overruled by State v. Ogden*, 2018 UT 8, ¶ 48 n.12. Recently, however, our supreme court determined that the same "proximate cause" standard ordinarily applied in civil cases should apply in the criminal restitution context as well. *See State v. Ogden*, 2018 UT 8, ¶ 39 (stating that "we opt for the reading that harmonizes with the causation standard that would apply in an analogous civil action: proximate cause"); *see also id.* ¶ 48 ("we find that proximate cause is required to find that a 'criminal activity . . . has resulted in pecuniary damages'" (quoting Utah Code section 77-38a-302(1))). *Ogden* explicitly "overrule[d] the

_____

2. The entire Crime Victims Restitution Act is codified at Utah Code sections 77-38a-101 to -601.

body of court of appeals precedent applying [the] 'modified but for' test." *Id.* ¶ 48 n.12. Thus, we apply principles of proximate causation in deciding this appeal.

¶21 Proximate cause has two elements. First, but-for causation must be present; indeed, proximate cause "is that cause which, in a natural and continuous sequence, unbroken by any new cause, produced the injury, and without which the injury would not have occurred." *Dee v. Johnson*, 2012 UT App 237, ¶ 4, 286 P.3d 22 (quotation simplified); *see also* Model Utah Jury Instructions 2d (MUJI) CV209(1) (2016), https://www.utcourts.gov/resources/muji/inc_list.asp?action=sho wRule&id=2#209 [https://perma.cc/FB39-NJJM] (defining the first element of proximate cause as whether "the person's act or failure to act produced the harm directly or set in motion events that produced the harm in a natural and continuous sequence"). Second, the harm must be foreseeable. *Dee*, 2012 UT App 237, ¶ 5; *see also* MUJI CV209(2) (defining the second element of proximate cause as whether "the person's act or failure to act could be foreseen by a reasonable person to produce a harm of the same general nature"). Proximate cause requires "some greater level of connection between the act and the injury than mere 'but for' causation." *See Raab v. Utah Ry.*, 2009 UT 61, ¶ 23, 221 P.3d 219. The central question in assessing proximate cause is "whether liability should attach to a particular cause in fact." *Id.* ¶ 22; *see also USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 114, 372 P.3d 629 (stating that "[u]ltimately, a proximate cause analysis looks to whether an individual who is a but-for cause of the harm should nevertheless be excused from liability").[3]

---

3. Under our old "modified but-for" test, criminal conduct can be said to "result[] in" pecuniary damages when "(1) the damages would not have occurred but for the conduct . . . and (2) the causal nexus between the [criminal] conduct and the loss . . . is not too attenuated (either factually or temporally)." *State v. Gibson*, 2017 UT App 142, ¶ 11, 405 P.3d 716 (quotation

(continued…)

¶22    A defendant may, of course, agree (for instance, as part of a plea bargain) that a particular category of restitution was proximately caused by her criminal activity, and may even agree to pay a specific amount of restitution. *See, e.g.*, *State v. Bickley*, 2002 UT App 342, ¶ 9, 60 P.3d 582 (stating that "restitution can include payment for crimes not listed in the information so long as a defendant admits responsibility or agrees to pay restitution" (citing Utah Code Ann. § 76-3-201(8)(a) (LexisNexis 2017))). But absent a stipulation by the defendant, the State bears the burden of establishing restitution. *See Brown*, 2009 UT App 285, ¶ 10 (stating that "to include an amount in a restitution order, the State must prove that the victim has suffered economic injury and that the injury arose out of the defendant's criminal activities"); *cf. Fox v. Brigham Young Univ.*, 2007 UT App 406, ¶ 21, 176 P.3d 446 (stating that "'the causal connection between the alleged negligent act and the injury is never presumed and . . . this is a matter the plaintiff is always required to prove affirmatively'" (quoting *Jackson v. Colston*, 209 P.2d 566, 568

---

(…continued)
simplified). These elements are similar to the elements of proximate cause, in that both tests require the existence of "but-for causation" as a threshold principle, and then both require an examination of the strength of the causal nexus between the conduct and the loss; indeed, on at least a few occasions over the years, we referred to causation in the restitution context in terms of proximate cause. *See State v. Mast*, 2001 UT App 402, ¶ 24, 40 P.3d 1143 (stating that a "trial court may impose restitution for amounts proximately caused by defendant's conduct"); *see also State v. Larsen*, 2009 UT App 293, ¶ 8, 221 P.3d 277 (citing *Mast* and stating that "the defendant could be ordered to pay only 'restitution for amounts proximately caused by [her] conduct'"). Still, though, we view the *Ogden* case as imposing a "more stringent . . . test of legal causation" than our modified but-for test, *see State v. Ogden*, 2018 UT 8, ¶ 44, and it therefore follows that, after *Ogden*, the State's burden of demonstrating a sufficient causal link became at least somewhat heavier.

(Utah 1949))). And as part of this burden, the State must prove the necessary causal link between a defendant's criminal conduct and a victim's pecuniary damages.[4] *Brown*, 2009 UT App 285, ¶ 10.

¶23  In this case, however, the factual record is scant: Oliver waived her right to a preliminary hearing, no trial was ever held, and the State—the party bearing the burden to prove the necessary causal link—put no evidence into the record at the restitution hearing. Indeed, at that hearing, neither party called any witnesses to testify, and neither party offered any exhibits into evidence.

¶24  Given the state of the record, the State conceded at oral argument that the only actual facts properly before the court must be drawn from three sources: (a) facts which are necessarily part of the elements of the crimes to which Oliver pled guilty; (b) the "factual basis" for Oliver's plea, as stated on the record at the change of plea hearing; and (c) the statement Oliver provided to probation officers in connection with the

---

4. We are unaware of any Utah appellate opinions discussing the level of proof required to prove restitution in a criminal case, and the operative statute (the Crime Victims Restitution Act) provides no guidance on the issue. However, in federal courts, and in other state jurisdictions of which we are aware, the "[g]overnment bears the burden of proving" the restitution amount, including the requisite causal link, "by the preponderance of the evidence." *See United States v. Wells*, 873 F.3d 1241, 1265 (10th Cir. 2017); *see also, e.g., In re Stephanie B.*, 65 P.3d 114, 118 (Ariz. Ct. App. 2003) (citing cases from several jurisdictions, and stating that "[t]he burden of proof applicable to restitution is proof by a preponderance of the evidence"). Neither party has raised or briefed this issue in this appeal, however, and so we refrain from here determining what level of proof the State is required to meet.

preparation of her presentence report.[5] From this record, we must evaluate Oliver's arguments.

A.    The Causal Link Between the Overdose and Victim's Death

¶25    We first examine Oliver's argument that the State failed to present sufficient evidence to prove a causal link between Victim's overdose and Victim's eventual death. Even assuming, without deciding, that no such evidence was introduced into the record before the district court,[6] we conclude that any error in this regard was invited by Oliver, because Oliver repeatedly made representations to the district court that assumed precisely such a causal link.

¶26    Significantly, at no point in her briefing or argument before the district court did Oliver ever assert that the State had failed to demonstrate the requisite causal link between Victim's overdose and his death. Instead, Oliver effectively admitted the fact that Victim died of an overdose of methamphetamine,

---

5. The facts recited in the Background section, above, come from these sources.

6. Based on our review of the record, Oliver's argument that the record contains no admissible evidence linking Victim's overdose with Victim's death appears to be correct. None of the three sources of facts contained in the thin record includes any actual evidence that Victim died of a drug overdose. One cannot infer a causal link from Oliver's plea to reckless endangerment, or from Oliver's statements to either the district court at the plea hearing or to probation officers during the preparation of her presentence report. The presentence report refers to an "autopsy [that] showed [that Victim] died due to drug toxicity," but the State concedes that the portion of the presentence report that references the "autopsy" is inadmissible, and no party sought to admit any such report before the district court.

asserting in her briefing before the district court that it was Victim's "own ingestion of a large quantity of methamphetamine that was the proximate cause of his death." Oliver took this same position at the restitution hearing, arguing there that "[t]he proximate cause of [Victim's] death unfortunately and practically was his own independent decision to ingest a lethal quantity of methamphetamine." While these arguments certainly raise a challenge to the strength of the causal link between Oliver's own actions and Victim's overdose, they do not call into question—and, indeed, effectively concede—the causal link between Victim's overdose and his death. Under these circumstances, the argument Oliver makes now, on appeal, that there is no evidence of such a causal link is not only unpreserved for appellate review, but Oliver invited any error that might exist in the district court's ruling in this regard.

¶27   "Under the doctrine of invited error, an error is invited when counsel encourages the trial court to make an erroneous ruling." *State v. McNeil*, 2016 UT 3, ¶ 17, 365 P.3d 699. The invited error doctrine "discourages parties from intentionally misleading the trial court so as to preserve a hidden ground for reversal on appeal," and it also "gives the trial court the first opportunity to address [a] claim of error." *Id.* (quotation simplified). "[I]nvited error precludes appellate review of an issue." *State v. McNeil*, 2013 UT App 134, ¶ 24, 302 P.3d 844, *aff'd*, 2016 UT 3, 365 P.3d 699. Thus, when an error is invited by an appellant, we will not review it even for plain error. *State v. Winfield*, 2006 UT 4, ¶ 14, 128 P.3d 1171.

¶28   Here, Oliver invited any error in the district court's ruling by assuming—and even arguing to the district court—that there existed a sufficient causal link between Victim's overdose and his death. While we are not suggesting that Oliver was intentionally attempting to mislead the district court, Oliver's arguments—intentionally or not—did indicate that Oliver was not contesting the existence of a causal link between Victim's overdose and Victim's death. Had Oliver taken the position, before the district court, that she considered the State's proof of a

causal link between the overdose and the death insufficient, the State could have easily taken steps at the restitution hearing (such as introducing the autopsy report into evidence or calling the medical examiner as a witness) to attempt to prove that causal link.[7] Oliver made no such argument below, and even led the district court to believe that Victim's death was caused by a methamphetamine overdose. We cannot now allow Oliver to raise the argument here that there is no evidence of any causal link between the overdose and the death.

¶29   Accordingly, we conclude that Oliver invited this claim of error, and we will therefore not address it further. We take it as an established fact, then, that Victim died as a proximate result of an overdose of methamphetamine.[8]

---

7. For this reason, our preservation doctrines apply here as well, rendering Oliver's specific argument here unpreserved. *See Patterson v. Patterson*, 2011 UT 68, ¶ 15, 266 P.3d 828 (stating that "the preservation rule should be more strictly applied when the asserted new issue or theory depends on controverted factual questions whose relevance thereto was not made to appear at trial" (quotation simplified)).

8. On remand, the existence of a sufficient causal relationship between Victim's overdose and Victim's death must be taken as established, because that issue is now the law of the case. "[U]nder the law of the case doctrine, a decision made on an issue during one stage of a case is binding on successive stages of the same litigation." *IHC Health Services, Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 26, 196 P.3d 588 (quotation simplified). The mandate rule, a subset of the law of the case doctrine, "binds both the district court and the parties to honor the mandate of the appellate court." *Id.* ¶ 28. Under this rule, "the decisions of an appellate court become the law of the case and cannot be reconsidered on remand." *Mid-America Pipeline Co. v. Four-Four, Inc.*, 2009 UT 43, ¶ 13, 216 P.3d 352. Because the district court

(continued…)

B.     The Causal Link Between Oliver's Conduct and Victim's Overdose

¶30     While Oliver cannot here challenge the strength of the causal link between Victim's overdose and his death, Oliver can[9] and does challenge the strength of the causal link between her criminal conduct and Victim's drug overdose. Specifically, Oliver asserts that the State did not present evidence sufficient to establish a proximate causal link between her conduct and Victim's drug overdose. Based on the record and procedural posture of this case, we find Oliver's arguments persuasive.

¶31     As noted above, proximate cause contains two basic elements: (1) but-for causation, and (2) foreseeability. *See Dee*, 2012 UT App 237, ¶¶ 4–5. The State persuasively argues that Oliver effectively conceded the existence of but-for causation when her attorney stated in open court at the plea hearing that

---

(…continued)
made a ruling on the issue of a causal link between Victim's methamphetamine use and his overdose, and because Oliver invited any error in that ruling and is therefore prevented from appealing it, Oliver cannot re-litigate that issue on remand.

9. In its brief, the State argued that Oliver's general causation argument was unpreserved, because Oliver phrased her arguments to the district court in terms of "proximate causation" rather than in terms of the then-applicable "modified but-for" causation standard. Oliver, however, was ahead of her time—as noted, in *Ogden* our supreme court repudiated the "modified but-for" test and held that principles of proximate causation are to be applied in the restitution context. *See Ogden*, 2018 UT 8, ¶ 39; *see also Mast*, 2001 UT App 402, ¶ 24 (using "proximate cause" terminology in the restitution context, even before *Ogden*). Especially in light of *Ogden*, we have no trouble concluding that Oliver preserved her general causation arguments for appellate review.

Oliver "was residing in a home where she allowed two other people to use methamphetamine that resulted in the overdose . . . ." The district court asked Oliver if that was "what happened," and Oliver answered affirmatively. Thus, we agree with the State that Oliver has conceded that allowing Victim into her home to smoke methamphetamine set in motion a chain of events that "produced the injury, and without which the injury would not have occurred." *Id.* ¶ 4 (quotation simplified). We agree with the State that Oliver has effectively admitted the existence of at least a but-for causal link between her actions and Victim's overdose—if Boyfriend, with Oliver's tacit approval, had not invited Victim and Friend over to their house to "smoke a bowl," Victim would not have overdosed on methamphetamine.

¶32 Oliver argues, however, that the causal nexus is too attenuated to constitute proximate cause. Specifically, Oliver asserts that Victim died not from smoking methamphetamine together with her and Boyfriend but, rather, died from his own later additional oral ingestion of methamphetamine in the bathroom, events she maintains she knew nothing about and did not sanction. As she puts it, she "did not allow [Victim] to parachute additional amounts of methamphetamine" and "could not have foreseen that [Victim] would secretly swallow a dangerous amount of methamphetamine in addition to smoking."

¶33 Although Oliver does not phrase it in precisely this way, she is effectively arguing that a "superseding cause" broke the chain of causation.[10] Under Utah law, "[a] superseding cause is

10. Before the district court, Oliver phrased her superseding cause argument more explicitly, asserting in her written memorandum that Victim's "decision to ingest methamphetamine was the 'new cause' or the intervening event that was the direct and proximate cause" of his death, and arguing during the restitution hearing that the causal link was

(continued…)

an unforeseeable act of subsequent negligence that severs the causal connection to an initial causal act." *Thayer v. Washington County Sch. Dist.*, 2012 UT 31, ¶ 61, 285 P.3d 1142 (Lee, J., dissenting); *Steffensen v. Smith's Mgmt. Corp.*, 820 P.2d 482, 488 (Utah Ct. App. 1991) (stating that a "more recent negligent act may break the chain of causation and relieve the liability of a prior negligent actor") (quotation simplified), *aff'd*, 862 P.2d 1342 (Utah 1993). A superseding cause is a magical thing: it operates to relieve the original actor from *all* liability for her original (and potentially tortious) act. *See Steffensen*, 820 P.2d at 488 (stating that a superseding cause "relieve[s] the liability of a prior negligent actor"); *see also* Restatement (Second) of Torts, § 440 cmt. b (Am. Law Inst. 1965) (stating that "[a] superseding cause relieves the actor from liability, irrespective of whether his antecedent negligence was or was not a substantial factor in bringing about the harm").[11]

---

(…continued)
"broken by the intervening factor, the independent intervening action" of Victim swallowing methamphetamine.

11. By relieving the original tortfeasor of *all* liability, the superseding cause doctrine is at least arguably inconsistent with principles of comparative fault, which have been a part of Utah law since at least 1973. *See Graves v. North E. Services, Inc.*, 2015 UT 28, ¶ 44, 345 P.3d 619 (stating that "[d]ecades ago our legislature abrogated the common law doctrine of contributory negligence" when it adopted the "1973 Comparative Negligence Act"). However, we have previously stated that "we are skeptical . . . that the comparative negligence statute supplanted the doctrine of superseding cause," because on many occasions since 1973 Utah appellate courts have continued to refer to and apply the doctrine. *See Gardner v. SPX Corp.*, 2012 UT App 45, ¶ 35, 272 P.3d 175 (citing cases). In this case, however, we need not directly address the question, because no party mounts any argument here that the superseding cause doctrine has been

(continued…)

¶34 This doctrine, however, only applies to relieve the original negligent actor of liability when the subsequent negligent act is not "reasonably foreseeable" to the original actor. *Steffensen*, 820 P.2d at 488. Indeed, a "superseding cause, sufficient to become the proximate cause of the final result and relieve [the original actor] of liability for his original negligence, arises only when an intervening force was unforeseeable and may be described with the benefit of hindsight, as extraordinary." *Id.*; *see also Harris v. Utah Transit Auth.*, 671 P.2d 217, 219 (Utah 1983) (stating that a subsequent act of negligence is not a superseding cause if either (a) the original actor "should have realized" the third person might so act; (b) a reasonable person "would not regard" the third person's actions as "highly extraordinary"; or (c) the "intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent" (quoting Restatement (Second) of Torts § 447 (Am. Law Inst. 1965))).[12]

---

(…continued)
supplanted by Utah's comparative fault statutes. We therefore assume, without deciding, that the doctrine retains its robustness.

12. The superseding cause doctrine does not apply where the original tortfeasor is accused of committing intentional torts. *See Hess v. Canberra Dev. Co.*, 2011 UT 22, ¶ 4, 254 P.3d 161 (stating that "intervening and superseding causes are not a defense to intentional torts"). However, the relevant crime to which Oliver pled guilty does not require intent; it requires only that Oliver have acted recklessly. *See* Utah Code Ann. § 76-5-112(1) (LexisNexis 2017) (stating that "[a] person commits reckless endangerment if . . . the person *recklessly* engages in conduct that creates a substantial risk of death or serious bodily injury to another person" (emphasis added)). The State makes no argument that the superseding cause doctrine does not apply

(continued…)

¶35 The State asserts that the requisite causal link between Oliver's actions and Victim's death is present here, because "Defendant's admissions that she allowed Victim in her home to use methamphetamine and that Victim overdosed as a result establish[] that Defendant was at least a substantial causative factor in Victim's death." But the State's argument misses the mark, because even if we were to assume that Oliver's actions were a "substantial causative factor" in Victim's death, *see McCorvey v. Utah State Dep't of Transp.*, 868 P.2d 41, 45 (Utah 1993) (stating that "[t]o establish proximate cause, [a plaintiff] must prove that [the defendant's] conduct was a substantial causative factor leading to his injury," and that "there can be more than one proximate cause . . . of an injury"), Oliver will nevertheless be absolved of monetary liability if there exists a superseding cause of Victim's death, *see* Restatement (Second) of Torts § 440 cmt. b (Am. Law Inst. 1965) (stating that "[a] superseding cause relieves the actor from liability, irrespective of whether his antecedent negligence was or was not a substantial factor in bringing about the harm").

¶36 And the district court simply did not meaningfully engage with Oliver's argument, explicitly made below, that Victim's own actions constituted a superseding cause of his death. The district court's ruling on the subject comprised one paragraph, as follows:

> While the victim did ingest the methamphetamine, that did not absolve [Oliver] of her culpability for the pecuniary damages. By her own statement, she allowed the victim to come to her home to smoke methamphetamine. This in itself was recklessly engaging in conduct that created a substantial risk

_____

(…continued)
where the tortfeasor is accused of committing reckless actions, and we therefore assume, without deciding, that the doctrine is available to Oliver under these circumstances.

of death or serious bodily injury to the victim; allowing and abetting someone to ingest methamphetamine is inherently risky. It was also foreseeable that allowing someone to ingest methamphetamine either by smoking or swallowing could lead to death or serious bodily injury.

While the district court did generally discuss whether Victim's death was or should have been foreseeable to Oliver, the district court did not specifically discuss whether Victim's actions in parachuting methamphetamine were or should have been foreseeable to Oliver, or whether those actions were "extraordinary." *See Steffensen*, 820 P.2d at 488 (quotation simplified). A ruling on this point is necessary in order to determine whether Victim's actions constituted a superseding cause of his death.

¶37 We could nevertheless affirm the district court's ruling if we were convinced that the record on appeal supported a determination that Victim's actions in parachuting methamphetamine were not extraordinary and were (or should have been) foreseeable to Oliver. *See Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 (stating that "an appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court" (quotation simplified)). But we are not so convinced.

¶38 As noted above, the record in this case is spare, and allows us to draw facts from only three sources: any facts necessarily implied by Oliver's plea; the one brief paragraph of facts Oliver admitted during the plea colloquy; and Oliver's personal statement to probation officers. The State made no effort to supplement that factual record through testimony or documents. These factual sources tell us almost nothing about whether Victim's actions in parachuting methamphetamine were extraordinary, or whether they should have been foreseeable to

Oliver. While it is possible that such a conclusion could reasonably be drawn after a more complete restitution hearing on remand, the record before us now hardly compels the conclusion that Victim's actions were not extraordinary and were (or should have been) foreseeable to Oliver.

¶39　The district court did not hear testimony from Oliver, and therefore we know very little about whether Oliver actually could have foreseen that Victim and Friend would, after smoking methamphetamine, retreat to the bathroom for the purpose of parachuting additional methamphetamine. We know from her statement to the probation officers that she "did not know" that Victim and Friend were going to swallow additional methamphetamine. But we do not know whether Victim and Friend had ever done such a thing before; whether Oliver knew that Victim and Friend were prone to such activity; whether Oliver had ever parachuted methamphetamine before; or whether Oliver knew that parachuting methamphetamine was even a thing.

¶40　The district court likewise did not hear any evidence about parachuting in general, other than the fact that Victim and Friend had used that method to ingest additional methamphetamine on the day in question. There was no testimony that, for instance, parachuting is a common way of ingesting methamphetamine; no witness, expert or lay, informed the district court that persons familiar with using methamphetamine would likely know about, and be able to foresee the probability of, persons ingesting the drug by swallowing it.[13] For all we know from this record, it is at least

13. Likewise, no evidence was provided regarding the medical effects of swallowing (as opposed to smoking) methamphetamine. The record does not inform us whether such a method has a faster or slower effect on the user, and sheds no light on the extent to which Victim's ingestion of methamphetamine made it more likely that he would overdose.

equally likely that ingesting methamphetamine by parachuting it is extremely rare and not the type of thing that happens as a matter of course following smoking.

¶41 Had the district court made a factual finding, based on competent evidence, that Victim's actions were foreseeable, we would have deferred to such a finding. But the district court made no such determination, and we are unable to affirm on alternative grounds because the record before us does not compel the conclusion that Oliver reasonably should have foreseen Victim's actions.

## II. Joint and Several Liability

¶42 Oliver next argues that the district court erred in holding her jointly and severally liable with Boyfriend for the full amount of the restitution. As discussed above, this issue is unpreserved. Therefore, we review it for plain error. To prevail under a plain error review, Oliver must establish that (1) an error exists, (2) the error should have been obvious, and (3) the error prejudiced her. *Johnson*, 2017 UT 76, ¶ 20. Oliver's argument founders on the second element, because Oliver cannot demonstrate that the district court made an "obvious" error.

¶43 "For an error to be obvious to the trial court, the party arguing for the exception to preservation must show that the law governing the error was clear or plainly settled at the time the alleged error was made." *Id.* ¶ 21 (quotation simplified); *see also State v. Ross*, 951 P.2d 236, 239 (Utah Ct. App. 1997) (stating that "a trial court's error is not plain where there is no settled appellate law to guide the trial court"). The question of whether concepts of comparative fault apply in the restitution context—and whether the civil law's abolition of joint and several liability should be imported into the restitution arena—is an interesting and multifaceted one that has not yet been answered by Utah's appellate courts. There is no doubt that, one day, that question will be properly raised and addressed. But for the time being, there is no "settled appellate law" governing the question, and

we therefore cannot conclude that, by imposing a joint and several restitution order, the district court committed a plain and obvious error. *See State v. Dean*, 2004 UT 63, ¶ 16, 95 P.3d 276 (to establish obvious error, the defendant "must show that the law governing the error was clear at the time the alleged error was made"). Accordingly, Oliver has not shown that the district court plainly erred by requiring her to pay restitution jointly and severally with Boyfriend.[14]

CONCLUSION

¶44    For the reasons set forth herein, we vacate the district court's restitution order, and remand this case to the district court for additional restitution proceedings consistent with this opinion, including potentially a new restitution hearing, during which the district court should reconsider the question of whether there exists a sufficient causal link between Oliver's actions and Victim's overdose, and should specifically consider whether Victim's actions in parachuting methamphetamine were a superseding cause of his death.

———————

CHRISTIANSEN, Judge (concurring):

¶45    Based upon the Utah Supreme Court's recent decision in *State v. Ogden*, 2018 UT 8, and its determination that the

---

14. As with Oliver's argument challenging the causal relationship between Victim's overdose and Victim's death, *see* supra ¶ 29 & n.8, Oliver is precluded from reasserting this challenge on remand because our resolution of this issue is now the law of the case. *See Mid-America Pipeline Co.*, 2009 UT 43, ¶ 13; *IHC Health Services, Inc.*, 2008 UT 73, ¶ 26. Because Oliver failed to properly raise the issue in this appeal, Oliver will not be permitted to resurrect it on remand.

"proximate cause" standard of causation should apply in criminal restitution cases, I concur with the lead opinion's decision that this case must be remanded because the district court did not address the issue of foreseeability and consider specifically whether Victim's actions in parachuting more methamphetamine was a superseding cause of his death. I write separately, however, to emphasize a point about the causation standard in criminal restitution hearings that was recognized in *Ogden*, which point stems from prior Utah Supreme Court and Utah Court of Appeals decisions.

¶46    In *State v. Robinson*, 860 P.2d 979 (Utah Ct. App. 1993), this court stated that "[m]atters of negligence, proximate cause and the amount of resulting damages are best left to civil litigation." *Id.* at 983. The Utah Supreme Court agreed in *State v. Laycock*, 2009 UT 53, 214 P.3d 104—at least in dicta—when the court noted that "there are procedural safeguards available to a litigant in a civil setting that are unavailable in a criminal restitution proceeding. When the facts of a case are limited or unclear, the civil setting is the best place for them to be determined." *Id.* ¶ 29. The *Ogden* court again acknowledged this point when it recognized "a number of the difficulties a sentencing court [might] face in trying to resolve issues of causation and losses, most notably a lack of opportunity for discovery that would allow a defendant to 'raise issues of proximate cause and comparative negligence by using depositions and interrogatories to gather relevant information.'" 2018 UT 8, ¶ 42 (quoting *Laycock*, 2009 UT 53, ¶ 22). But based upon a plain language analysis of the Crime Victims Restitution Act, our supreme court determined that the Utah Legislature intended that the same causation standard applied in a civil action would apply in the criminal restitution context. *Id.* ¶ 38.

¶47    Clearly, "the best evidence of the legislature's intent is the plain language of the statute itself," and I cannot disagree with the supreme court's analysis in *Ogden*. *Id.* ¶ 31 (quotation simplified). However, I think it is important to keep in mind all of the practical limitations a sentencing court faces in ordering

restitution in a criminal case. If the Utah Legislature did not intend for proximate cause to be the standard applied in the criminal restitution context, it may want to amend the Crime Victims Restitution Act.

———————